Receipt Number CFC100004418

# In the United States Court of Federal Claims

Larry Golden
~~Larry Golden~~

_____

**Plaintiff(s),**

**v.**

**THE UNITED STATES,**

**Defendant.**

_____

)
)
)
)
)
)
)
)
)
)
)
)

**Case No.** ___19-104 C___

**Judge** _____

## COMPLAINT

Your complaint must be clearly handwritten or typewritten, and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space, you may use another blank page.

If you intend to proceed without the prepayment of filing fees (*in forma pauperis* (IFP)), pursuant to 28 U.S.C. § 1915, you must file along with your complaint an application to proceed IFP.

1. **JURISDICTION.** State the grounds for filing this case in the United States Court of Federal Claims. The United States Court of Federal Claims has limited jurisdiction (*see e.g.,* 28 U.S.C. §§ 1491-1509).

This is a claim pursuant to 28 U.S.C. 1491(a) for recovery of Plaintiff's reasonable and entire compensation for the unlicensed use and manufacture, for and by the United States, of inventions described in and covered by United States Patent Numbers: 7,385,497; 7,636,033; 8,106,752; 8,334,761; 8,531,280; ,RE43,891; RE43,990; 9,096,189; 9,589,439; and, 10,163,287. The jurisdiction of this Court is based on the provisions of 28 U.S.C. 1491(a): 28 U.S.C. 1491 : "The United States Court of Federal Claims shall have jurisdiction to render judgement upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with bthe United States, or for liquidated or unliquidated damages in cases not sounding in tort". The Fifth Amendment of the United States Constitution includes a provision known as the Taking Clause, which states that "private property [shall not] be taken for public use, without just compensation."

## 2. PARTIES

Plaintiff, Larry Golden , resides at 740 Woodruff Road, #1102

(Street Address)

Greenville, SC 29607 , 864-288-5605

(City, State, ZIP Code)          (Telephone Number)

If more than one plaintiff, provide the same information for each plaintiff below.

**RELATED CASES.** Is this case directly related to any pending or previously filed cases in the United States Court of Federal Claims?   ● Yes ○ No

If yes, please list the case(s) below, including case number(s):

Larry Golden v. The United States; Case No. 13-307 C

## 3. STATEMENT OF THE CLAIM.
State as briefly as possible the facts of your case. Describe how the United States is involved. You must state exactly what the United States did, or failed to do, that has caused you to initiate this legal action. Be as specific as possible and use additional paper as necessary.

PLAINTIFF LARRY GOLDEN, (hereinafter, "Complainant", "Plaintiff", or "Patent Owner") individually files this Complaint against Defendant UNITED STATES OF AMERICA (hereinafter, "Defendant", "Government", "United States", "DOJ", "DHS", "Claims Court", "PTAB Court", or "Appeals Court"). Plaintiff alleges the following based on information and belief, and personal knowledge as to the allegations pertaining to itself. Plaintiff Larry Golden makes the following allegations in support of his claim for relief and recovery of Plaintiff's reasonable and entire compensation under 28 U.S.C. 1491(a): "Government" 'Takings' of a Patent under the Fifth Amendment Clause" (hereinafter, "Fifth Amendment Takings" or "Takings"). PLAINTIFF LARRY GOLDEN, is filing this Complaint pursuant to RCFC 40(b): Seperate Trails. "For convenience, to avoid prejudice, or to expedite and economize...

**4.  RELIEF.**  Briefly state exactly what you want the court to do for you.

Enter judgement that the "Government" has "Taken" Plaintiff's property within the meaning of the Fifth Amendment to the United States Constitution, and award Plaintiff his full and just compensation for the unconstitutional "Takings" of Plaintiff's prop

I declare under penalty of perjury that the foregoing is true and correct.

Signed this <u>17th</u> day of <u>January</u>, <u>2019</u>.
    (day)           (month)           (year)

_____
          (Signature of Plaintiff(s))

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LARRY GOLDEN,

              Plaintiff,

              V.

UNITED STATES,

              Defendant.

Case No: **19-104 C**

Judge:_____

January 17, 2019

## **COMPLAINT**

PLAINTIFF LARRY GOLDEN (hereinafter, "Complainant", "Plaintiff" or "Patent Owner") individually files this Complaint against Defendant UNITED STATES OF AMERICA (hereinafter, "Defendant", "Government", "United States", "DOJ", "DHS", "Claims Court", "PTAB Court", or "Appeals Court"). Plaintiff alleges the following based on information and belief, and personal knowledge as to the allegations pertaining to itself.

Plaintiff Larry Golden makes the following allegations in support of its claim for relief and recovery of Plaintiff's reasonable and entire compensation under 28 U.S.C. § 1491(a): "Government 'Takings' of a Patent under the Fifth Amendment Clause" (hereinafter, "Fifth Amendment Takings" or "Takings").

## PARTIES

Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

The United States is the Defendant to this action based upon the actions and conduct of its agents, including at least the following: Court of Federal Claims (CFC); Department of Justice (DOJ); Department of Homeland Security (DHS), Court of Appeals for the Federal Circuit (CAFC) and all other Government Agencies and personnel named in this pleadings.

## MANDATORY NOTICE OF RELATED PROCEEDINGS

The Plaintiff's United States Patents: 7,385,497; 7,636,033; 8,106,752; 8,334,761; 8,531,280; RE43,891; RE43,990; 9,096,189; 9,589,439; and, 10,163,287  is being asserted by Patent Owner against the UNITED STATES OF AMERICA in the United States Federal Court of Claims (CFC) through a suit *Larry Golden v. United States*, Case No. 13-307 C.  The case was filed on May 1, 2013 under the statutes: 28 U.S.C. § 1491(a) "Government Takings of a Patent under the Fifth Amendment Clause" and 28 U.S.C. § 1498(a) "Government Infringement". The 28 U.S.C. § 1491(a) "Government Takings of a Patent under the Fifth Amendment Clause" alleged in this complaint is <u>POST</u> the May 1, 2013 filing date of Case No. 13-307 C currently pending in the United States Federal Court of Claims (CFC). See Final Amended Complaint (Dkt. No. 121) filed 08/10/2017 and Final Claim Chart (Dkt. No. 121) filed 08/10/2017

## PARTIES

Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business at 740 Woodruff Road, #1102, Greenville, S.C. 29607.

The United States is the Defendant to this action based upon the actions and conduct of its agents, including at least the following: Court of Federal Claims (CFC); CFC Senior Judge

Susan G. Braden, CFC Senior Judge Eric G. Bruggink, Department of Justice (DOJ);

Department of Homeland Security (DHS), Court of Appeals for the Federal Circuit (CAFC) and

all other Government Agencies and personnel named in this pleadings.

## JURISDICTION

This is a claim pursuant to 28 U.S.C. § 1491(a) for recovery of Plaintiff's reasonable and

entire compensation for the unlicensed use and manufacture, for and by the United States, of

inventions described in and covered by United States Patent Numbers: 7,385,497; 7,636,033;

8,106,752; 8,334,761; 8,531,280; RE43,891; RE43,990; 9,096,189; 9,589,439; a Continuation

Patent Application 15/530,839 filed March 06, 2017 that published on 06/29/2017 under

Publication No: US 2017-0186259 A1 and Issued as Patent Number 10,163,287 on December

25, 2018; a Continuation Patent App. to the now issued patent 10,163,287, filed January, 2019

The jurisdiction of this Court is based on the provisions of 28 U.S.C. § 1491(a): 28

U.S.C. § 1491(a): The United States Court of Federal Claims shall have jurisdiction to render

judgment upon any claim against the United States founded either upon the Constitution, or any

Act of Congress or any regulation of an executive department, or upon any express or implied

contract with the United States, or for liquidated or unliquidated damages in cases not sounding

in tort.

The Fifth Amendment of the United States Constitution includes a provision known as

the Takings Clause, which states that "private property [shall not] be taken for public use,

without just compensation."

## CONSTITUTIONAL PROVISION: 28 U.S.C. §§ 1491

When the Government takes property without following the eminent domain procedure,

the affected property owner (Plaintiff) has the right to bring an inverse condemnation "Takings"

lawsuit against the Government entity(s) that has taken his property The "Government Fifth

Amendment Takings" lawsuit that is filed under 28 U.S.C. § 1491 by the Plaintiff is "inverse"

rather than "direct" because it is brought by the patent owner, not by the Government agency(s)

or other entities having eminent domain power.  Therefore, the Plaintiff understands he carries

the burden of proof that his property rights were taken without the payment of compensation.

This differs from a direct condemnation following eminent domain procedures which places the

burden of proof upon the Government.

   Inverse condemnation is not limited to the permanent physical taking of the Plaintiff's

property.  Rather, it can include a temporary taking or occupation of private or personal property

that includes government regulation which burdens the property in such a way that the Patent

Owner cannot derive any economical use out of it.  When Government regulation significantly

burdens private or personal property the inverse condemnation may be referred to as a

"regulatory taking."  Most importantly, in an inverse condemnation or regulatory taking scenario

the government has failed to pay just compensation for the private property rights that have been

taken.

   Intangible assets are non-physical assets (such as franchises, trademarks, patents,

copyrights, and goodwill) that grant the potential for certain rights and privileges as well as the

possibility for economic benefits to the owner. The subject matter of a patented invention is

considered intangible. In Ruckelshaus v. Monsanto Company, 467 U.S. 986 (1984) the Court

held that a trade secret (i.e. intellectual property) is constitutionally protected property, and a

claim for its taking is within Tucker Act cognizance: "Although this Court never has squarely

addressed the question whether a person can have a property interest in a trade secret, which is

admittedly intangible, the Court has found other kinds of intangible interests to be property for

purposes of the Fifth Amendment's Taking Clause."  See, e.g., Armstrong v. United States,  364

U.S. 40, 44, 46 (1960) (materialman's lien provided for under Maine law protected by Taking

Clause); Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 596 -602 (1935) (real estate

lien protected); Lynch v. United States, 292 U.S. 571, 579 (1934) (valid contracts are property

within meaning of the Taking Clause). . . ."  467 U.S. at 1003.  That patent rights are property

rights, entitled to just compensation when taken by the United States, is not subject to revision at

this late date.  The premises as explained in 1910 remain intact, as explained in the record of that

enactment:  Rep. Dalzell.  But if the Government, through an authorized officer, has seen fit to

appropriate a patent of a citizen… every time that the United States Government assumes to take

forcibly, without the consent of the owner, a patented process, it violates the constitutional

provision which says no man's property shall be taken without compensation and without due

process of law. 45 Cong. Rec. 8755 at 8780.

## STATEMENT OF FACTS

1.      Between the years 2003-2006 the Plaintiff presented three "Economic Stimulus

and Terrorist Prevention Packages" to President Bush, his Cabinet, the Council of Economic

Advisers, the Black Congressional Caucus, the U.S. Senate, and the vast majority of the U.S.

Congress, that detailed the strategy of "Product Grouping" CD of Patent Owner's Discovery

Documents **Vol. I, Appx.1.** The "Product Grouping" strategy detailed how we as a Nation could

not only deter and prevent terrorist acts and activities, but would also stimulate the economy as

well. The strategy involved the grouping of products, devices, and systems needed from the

different industries; the grouping of products, devices, and systems needed to form a network(s)

for the ubiquitous communicating, monitoring, detecting (sensing), and controlling the events

and activities of our Nation's land, sea, and air.

2.      The Government's job in the strategy was to create competition through solicitations that would drive the cost down; making the cost to participate in the ubiquitous communicating, monitoring, detecting (sensing), and controlling, affordable to everyone and every industry (e.g. the government, the military, first responders, Law enforcement, the automobile industry, the lock industry, the detection industry, the medical industry, the telecommunication industry, and the security industry).

3.      The next step was to innovate: Plaintiff filed with the USPTO on November 17, 2004 a Disclosure Document that is used as evidence of conception of a device that is capable of communicating, monitoring, detecting, and controlling. The device was designed for Government and military use and therefore had to include security features (e.g. biometric technology that includes at least fingerprint and facial; disabling lock to deny entry after multiple failed attempts; radio frequency (RF) near-field communication (NFC) as a safer option to RFID.

4.      The Product Groupings strategy for preventing terrorism and stimulating the economic was started by the Plaintiff in the year 2004. NASA, Apple, Samsung, LG, and Qualcomm began administrating the strategy in the year 2008 when the DHS S&T Directorate awarded the Companies contracts to develop a modified a cell phone (smartphone) device for communicating, monitoring, detecting (sensing), and controlling. The development contracts were based on the same technology Plaintiff shared with the Department of Homeland Security (DHS) in a response to their Cell-All solicitation in the year 2007. Plaintiff also shared the same technology in a discussion with Mr. Edward Turner, Program Manager; DHS/S&T Directorate during an invite to the DHS in January, 2008. Example of stimulus strategy:

5.      Apple's total revenue for the year 2008 was $11.9 billion; Apple's total revenue for the year 2016 was $246.3 billion. Apple's market capitalization for the year 2008 was $88.68

billion; Apple's market capitalization for the year 2016 was $625.27 billion, and as of Dec. 6,

2017, Apple's market capitalization was $867.75 billion. Apple is on track to having $1 trillion in

market capitalization by year-end 2018. Apple's total number of employees for the year 2008

was 32,000; Apple's total number of employees for the year 2016 was 123,000.

6.      The Plaintiff wouldn't be here if the Government had authorized Apple, Samsung,

LG, and Qualcomm to develop a different version of a modified smartphone. The Government

authorized Apple, Samsung, LG, and Qualcomm to develop the Plaintiff's version of a

communicating, monitoring, detecting and controlling (CMDC) device but chose to keep the

same generic name of their product (e.g. smartphone).

7.      Based on hindsight, Plaintiff understands it seems like all of what Plaintiff

mentioned above was obvious to the development of the smartphone and was done first by

Apple, Samsung, LG, and Qualcomm. But that's not possible when the Plaintiff's CMDC device,

which was conceived in the year 2004, antedates Steve Job's smartphone that was introduced in

January of 2007 and only introduced GPS for the smartphone in January of 2008.

8.      Upon information and belief, the United States has "taken" and continues to

"take" the Plaintiff's personal property for the benefit of the public without paying just

compensation for the "takings". Plaintiff believes the first Government solicitation (request) for a

cell phone device capable of detecting chemical and biological agents, that included the subject

matter for the Plaintiff's Communicating, Monitoring, Detecting, Controlling (CMDC) Device

was issued on October 20, 2007 when the Department of Homeland Security (DHS) published a

pre-solicitation (Solicitation number BAA07-10), titled "Cell-All Ubiquitous Biological and

Chemical Sensing" ("Cell-All Solicitation"). The Cell-All Solicitation called for multiple

miniaturized sensors to be integrated with common devices ("Cell-All Devices"). Cell-All

Devices are cell phones equipped with multiple sensors used to identify and alert individuals and agencies of potential biological, chemical, radiological, or explosive threats.

9.      On November 28, 2007, the Plaintiff responded to the Cell-All Solicitation with a proposal, and in that proposal notified the agency that the Cell-All Solicitation called for a multi sensor detection system that incorporated the '497 Patent's technology: "CELL-ALL technical approach & rational taken from, 'Multi Sensor-Detection and Lock Disabling System.' (Patent Pending; Pub., 10-18-07; App. #11/397,118)."

10.      On September 28, 2011, the Department of Homeland Security gave a Cell-All Live Demonstration for Environmental Sensing. During this presentation the NASA Ames Research Center, Synkera Technologies, NC4, and Qualcomm gave a demonstration of prototype Cell All Devices. These prototypes utilized a separate sensor module, which communicates via Bluetooth with Qualcomm software to an Android phone. The cellphone, via a wireless network, sends the sensor data to a monitoring system. The monitoring system can send messages back to the phone to receive more or less information, and can contact emergency responders if necessary.

11.      Plaintiff is submitting a CD that illustrates at least an implied or express contract between DHS, NASA Ames Research Center, Synkera Technologies, NC4, and Qualcomm. Upon information and belief the elements of the at least implied or express contract between DHS, NASA Ames Research Center, Synkera Technologies, NC4, and Qualcomm are listed below. The passages provides proof of  such a contract; authorization and consent; and, Government use (Fitzpatrick—Attorney Work Product—CD; 11-09-27-cellall-v-all.mp4) **Vol. I Appx.2** Below is a summary of the CD:

Welcome and Introduction made by Stephen Dennis, DHS Program Manager for the

"Cell-All Ubiquitous Chemical Sensing Project".

- 16 minutes in: diagram of Qualcomm's sensing device and the needed specifications for the Apple iPhone.
- 21 minutes in: Cell-All prototype demonstration begins.
- 32 minutes in: quote from Dr. Jing Lee, "we have many phones in the field".
- 37 minutes in: diagram featuring Qualcomm.
- 38 minutes in: quote from Doug Hoffman, Program Manager for Qualcomm, "use commercial cell phone ecosystem".
- 41 minutes in: diagram showing at least twenty-five (25) necessary stakeholders (far exceeds the four (4) stakeholders of Apple, Samsung, LG, and Qualcomm named in Plaintiff-Appellant's complaint).
- 1:19 minutes in: quote from the "DHS Program Manager for the "Cell-All Ubiquitous Chemical Sensing Project" Stephen Dennis, "already for sell this week".
- 1:44 minutes in: quote from the "DHS Program Manager for the "Cell-All Ubiquitous Chemical Sensing Project" Stephen Dennis, "cooperative agreements".

12.     The Cell-All CD **Vol. I Appx.2** is Plaintiff's factual evidence and proof of

Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device,

"manufactured for and by the Government" with "authorization and consent" on the heightened

standard of "clear and convincing evidence.

13.     "*In Larson v. United States*, the Claims Court recognized that implied

authorization "may be found under the following conditions: (1) the government expressly

contracted for work to meet certain specifications; (2) the specifications cannot be met without

infringing on a patent; and (3) the government had some knowledge of the infringement." The

purpose behind permitting the government's authorization or consent to be implied is tied to the

government's need to procure items without disruption, and avoid the need for government agencies to perform an exhaustive patent search for products or services they wish to procure.

14. *In TVI Energy*, "the Federal Circuit found implied authorization or consent where the government required a contractor to demonstrate an allegedly infringing device as part of bidding requirements under a United States military solicitation for disposable thermal targets." The Government has "taken" and is using the Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device without a license. For that reason alone, the Plaintiff has stated a claim for which relief may be granted.

## THE GOVERNMENT'S CONTINUED REQUEST FOR PLAINTIFF'S "COMMUNICATING, MONITORING, DETECTING, AND CONTROLLING (CMDC) DEVICE"

15. 2013: Smartphones and Handheld Devices for Defense and Homeland Security Strategies, Plans, Challenges & Opportunities Symposium:

"U.S. Coast Guard Smartphones Needs, Challenges & Opportunities" Rear Admiral Robert E. Day, Jr., Assistant Commandant for Command, Control, Communications, Computers & Information Technology, (C4IT) & Director, Coast Guard Cyber Command, Pre-Commissioning Detachment, U.S. Coast Guard.

"DoD Mobile Strategy" Mr. Mark Norton, Senior Engineer, Department of Defense, Office of the Chief Information Officer, Office of the Under Secretary of Defense (CIO/OSD).

"Update on Spectrum Sharing for Mobile Devices at the Tactical Edge" Mr. Julius Knapp, Chief Engineer, Office of Engineering and Technology, Federal Communications Commission (FCC).

"Secure Smartphone Computing, Needs and Opportunities for a Secure yet Mobile Platform" Mr. Keith Trippie, Executive Director, Enterprise System Development, Office of the Chief Information Officer, Department of Homeland Security (DHS).

"DISA's Strategic Mobility Vision" Mr. Gregory Youst, Chief Mobility Engineer, Technology and Integration Division, Chief Technology Officer, Defense Information Systems Agency (DISA) (invited).

"Content-Based Mobile Edge Networking (CBMEN)" Dr. Keith Gremban, PhD., Program Manager, Content Based Mobile Edge Networking (CBMEN), Defense Advanced Research Project Agency (DARPA).

"Transformative Apps Program" Mr. Doran Michaels, Program Manager, Transformative Apps, DARPA.

"Windshear II Update" Mr. John-Isaac Clark, Chief Innovation Officer, Thermopylae Sciences & Technology & Mr. Lenwood Washington, Senior Systems Engineer, Mission Integration Directorate, Acquisition and Engineering, National Reconnaissance Office (NRO).

"Advancements in Mobile Devices for Chem-Bio Detection and Characterization" Dr. Calvin CHUE, PhD., Research Biologist, U.S. Army Research, Development and Engineering Command (RDECOM).

"ADAPT Unattended Ground Sensor Using Android Operating System and Original Design Manufacturers" Mr. Mark Rich, Program Manager, Strategic Technology Office, DARPA.

16.     2013: "The U.S. Department of Defense confirmed in a statement on Friday that Apple's iOS 6 mobile operating system is secure enough to connect to secure Pentagon networks."

17.     2013: "The U.S. Department of Defense confirmed in a statement on Friday that Apple's iOS 6 mobile operating system is secure enough to connect to secure Pentagon networks."

18.     2013: "Samsung's potential government deal signals new era for mobile security: Samsung may be ready to sign deals with the FBI and the U.S. Navy. Analysts say the news is proof that mobile in the enterprise has arrived. Samsung is close to inking a deal with the FBI and the U.S. Navy for mobile devices."

19.     2013: "National Institute of Standards and Technology (NIST), which examines and tests mobile devices and technologies for security clearance, granted the Apple software FIPS 140-2 certification (Level 1) last Friday. This approves iPhones and iPads running the software in conjunction with the U.S. government's lowest level of national security clearance."

20.     2013: "The U.S. Department of Defense announced today that it was further dropping its exclusive BlackBerry contract and opening all of its mobile communications networks to Apple, Google, and other device makers. 'The Department of Defense is taking a leadership role in leveraging mobile device technology by ensuring its workforce is empowered with mobile devices,' Defense Department Chief Information Officer Teri Takai said in a statement today."

21.     2013: "Samsung recently received the nod from the Pentagon for any Samsung device protected by the Knox security software, which includes the Galaxy S4 and other compatible tablets."

22.     2013: "For the first time, Apple's push into federal use opens up the U.S. government and military to competition for device procurement in the mobile space."

23.     2014: "The mobile device management system–MDM–began operating Jan. 31 as a control system through which approved devices must operate to get access to Defense Department networks. The MDM enforces security policies by blocking or permitting certain functions on smartphones and tablets."

24.     2014: "By opening its networks to Samsung and Apple devices, Defense Information Systems Agency (DISA) intends to broaden the variety of mobile computers that troops and civilian Defense Department employees can use in the field, on bases, in offices and elsewhere to receive and send information and work almost anywhere at any time."

25.     2014: "Samsung has announced that five of its Galaxy devices have been approved for the U.S government's Defense Information System Agency (DISA) products list. The devices include the Galaxy S4, Galaxy S4 Active, Galaxy Note 3, the Galaxy Note Pro 12.2 and the Galaxy Note 10.1 2014 Edition. All of them are using Android 4.4 (KitKat) along with Samsung's KNOX secure workspace platform, which includes system-level encryption for enterprise-based apps."

26.     2014: "The United States Air Force is replacing 5000 legacy BlackBerry smartphones with Apple's iPhone, and eventually all of their BlackBerry users will have to make the changeover. The announcement, reported by Defense News, comes as the future of BlackBerry within the Department of Defense is debated, with the chips seeming to fall on the side of transitioning away from a network supporting a mish-mash of BlackBerry 6 and 7 devices to a mix of modern devices — though apparently without BlackBerry 10 in that mix."

27.     2015: "Navy Plans for Android and iOS Devices. The Navy Enterprise Networks (NEN) Program Office is making progress on plans to transition to more modern mobile devices. Early users will be able to choose between the iPhone 5c and 5s, but the Navy wants to be as

13

flexible as possible and allow users to pick the devices that will work best for them, and plans to approve a wider range of devices. Approval to use the iPhone 6 and iPad Air is expected in Jan. or Feb. 2015, and approval to use Samsung Android phones and tablets is expected in March."

28.    2016: "This fiscal year Marines will receive Samsung smart phones that make calling for fire support easier, quicker and more accurate. The Target Handoff System Version 2, or THS V.2, is a portable system designed for use by dismounted Marines to locate targets, pinpoint global positioning coordinates and call for close air, artillery and naval fire support using secure digital communications."

29.    2016: "Both the LG Electronics G5 and V10 received a security certification from the U.S. Defense Information Systems Agency, as well as a certification by the National Information Assurance Partnership, which administers independent tests to see if the devices are reliable and secure. The two newer LG smartphone models have joined the select list of official devices that can be used by Department of Defense employees, according to the handset manufacturer and a DOD website. LG's older models, the G3 and G4 also received DISA certifications. The phones come equipped with LG's encryption technology from 2013, LG GATE. The advanced tech has secure email options, supports Virtual Private Network (VPN), and can remotely wipe the phone's memory."

30.    2016: "Use of Mobile Technology for Information Collection and Dissemination": A DACS Technology Assessment Report: The Data & Analysis Center for Software (DACS) was one of several United States Department of Defense (DoD) sponsored Information Analysis Centers (IACs), administered by the Defense Technical Information Center (DTIC). It was managed by the U.S. Air Force Research Laboratory (AFRL) and operated by Quanterion Solutions Inc. under a long term DoD contract. The website is no

longer available and was replaced by https://www.csiac.org/ DACS Report Number 518055:

Contract FA1500-10-D-0010; Prepared for the Defense Technical Information Center; Prepared

By: Chet Hosmer, Chief Scientist; Carlton Jeffcoat, Vice President, Cyber Security Division;

Matt Davis, Malware Analyst; Wetstone/Allen Corporation of America; 10400 Eaton Place;

Fairfax, VA 22030; Thomas McGibbon, DACS Director; Quanterion Solutions Inc. 100

Seymour Road Utica, NY 13502. (Paragraphs 79-84 below were taken from the Report)

31.     Mobile technology is increasingly being utilized as a tool for information

dissemination and collection across the Government. The Department of Defense (DoD),

Department of Homeland Security (DHS), Intelligence communities, and law enforcement are

among those agencies utilizing mobile technology for information management. The primary

mobile devices being utilized are the iPad®, iPhone®, Android™, and Windows Mobile™. The

open architecture of these devices is advantageous for rapid application development and release.

32.     New mobile technologies such as the iPhone®, iPad®, Android™ and similar

devices have revolutionized the way information can be distributed. In the past, mobile devices

such as Personal Data Assistants (PDAs) primarily focused on data storage and display. Today,

an increasingly large number of devices are focusing not only on data storage and display, but

also on communication and processing. As a result organizations have begun leveraging mobile

technology as a means of information dissemination. These organizations include, but are not

limited to, Government organizations such as the Department of Defense (DoD), the United

States Army, the Department of Homeland Security (DHS), and a number of critical

infrastructure organizations.

33.     Significant advancements in mobile technology have occurred since September

11, 2001, both in the advancement of the devices and the infrastructures that support them. For

example, mobile devices like the Android™ and iPad® can now operate equally and seamlessly via traditional cellular networks, as well as with infrastructure/ad hoc wireless networks.

34.     The Defense Advanced Research Projects Agency (DARPA) has launched a program known as the Transformative Apps Program. The purpose of this program is to place the correct mobile applications into the hands of warfighters. To facilitate this, a military application store is being created to promote collaboration between developers and users in the field.

35.     Another DoD initiative is Connecting Soldiers to Digital Applications (CSDA), sponsored by the Army Capabilities Integration Center (ARCIC) and the Army CIO/G6, with support from the Army Training and Doctrine Command (TRADOC) deputy commanding general for Initial Military Training, and other Army organizations. The purpose of this initiative is to determine the value of giving soldiers applications on mobile devices [ARMY]. During Phase One of the initiative the Army experimented with several types of smart phones to evaluate the effectiveness and usefulness of various mobile applications in the field. Devices tested included the Apple iPhone®, Google Android™ devices, and Microsoft Windows Mobile™ phones [C4ISR]. On these devices, applications were tested which covered a wide range of functions.

36.     DoD is also starting to integrate chemical and biological sensors into mobile devices. Researchers from the University of California, San Diego have developed a miniature chemical sensor which can detect harmful gas in the air and automatically send the information about the type and transmitting range of the gas. The chemical sensor is a silicon chip with hundreds of independent miniature sensors. These can identify the molecule of specific toxic gas and then report on it.

## COUNT I: TAKING OF PROPERTY WITHOUT JUST COMPENSATION

37.     Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

38.     Plaintiff is the sole holder of all rights, titles, and interests in and to the '497; '033, '752; '761, '280, '891; '990, '189, '439 and '287 patents, including all rights to enforce this patent and collect past and future damages for a "Government Takings".

39.     Plaintiff brings this claim on behalf of itself.

40.     The Government is prohibited from taking "property . . . for public use, without just compensation." U.S. Const. Amend. V. The issuance of a patent to Plaintiff recognized a property right in each of the inventions embodied in the relevant claims, and those property rights were presumed valid, and when issued those property rights vested in Plaintiff. See, e.g., Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank, 527 U. S. 627, 642 (1999) (patents as property right); James v. Campbell, 104 U. S. 356, 358 (1882) (same).

41.     Plaintiff's patents granted him the right to dispose of, transfer, or exclude others from the use of the invention. See Adams v. United States, 391 F.3d 1212, 1224 (Fed. Cir. 2004) (Under the Takings Clause, "property" is defined as a "legally-recognized property interest such as one in real estate, personal property, or intellectual property.")

42.     Upon information and belief, the United States has "taken" and continues to "take" the Plaintiff's personal property for the benefit of the public without paying just compensation for the "takings". Pursuant to the guidelines of a "Government Fifth Amendment Takings of a Patent" through the power of "eminent domain": the Government has taken the private and personal property subject matter as outlined in the Plaintiff's U.S. Patent No. 7,385,497 ("'497 Patent"), U.S. Patent No. 7,636,033 ("'033 Patent"), U.S. Patent No. 8,106,752 ("'752 Patent"), U.S. Patent No. 8,334,761 ("761" Patent"), U.S. Patent No. 8,531,280 ("280

17

Patent"), U.S. Reissue Patent No. RE43,891 (""891 Patent"), U.S. Reissue Patent No. RE43,990

(""990 Patent"), U.S. Patent No. 9,096,189 (""189 Patent"), U.S. Patent No. 9,589,439 (""439

Patent"), and U.S. Patent No. 10,163,287 (""287 Patent) specifications and patent claims that are

significantly the same or equivalent to the claimed inventions of the Plaintiff.

43.     It is the belief of the Plaintiff that the "Government" was given adequate notice,

made aware of, and told or signaled that the private and personal property subject matter as

outlined in the Plaintiff's patent(s) specifications and patent claims that was "taken" by the

"Government" are significantly the same or equivalent to the claimed inventions of the Plaintiff;

the "Government" has taken and used for the benefit of the public, the private and personal

property subject matter as outlined in the Plaintiff's patent(s) specifications and patent claims

that are significantly the same or equivalent to the claimed inventions of the Plaintiff; resulting in

the Government's manufacture and development of products, devices, methods, and systems that

are significantly the same or equivalent to the claimed inventions of the Plaintiff.

44.     It is the belief of the Plaintiff that the resulting economic impact of the "Takings"

is a reduction in value of the Plaintiff's property and by virtue of the access, disclosure,

manufacture, development or use, by or for the Government and its third party awardees, has

destroyed the Patent Owner's competitive edge; through the use, disposal, and right of a

government to take private or personal property for public use, the "Takings" has had a

substantial adverse impact (means unfavorable or harmful; preventing success or development)

on "the reasonable investment-backed expectations" of the Plaintiff.

45.     It is the belief of the Plaintiff that the character of the Government's action was

triggered when the "Takings" caused a permanent invasion of the Plaintiff's property and

eliminated all economically beneficial uses of such property; without authorization and consent from the Patent Owner and without just compensation to the

46.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") on March 31, 2014 stayed the Plaintiff's complaint of a 28 U.S.C. § 1491(a), "Government Takings of a Patent under the Fifth Amendment Clause" and proceeded only on the 28 U.S.C. § 1498(a), "Government Infringement" claims.

47.     It is the belief of the Plaintiff that the Claims Court ("Government") decision to proceeded only on the 28 U.S.C. § 1498(a), "Government Infringement" claims,  has allowed the DOJ ("Government"), the DHS ("Government"), and the PTAB Court ("Government") to improperly "take" three independent patent claims (11, 74, and 81) of the '990 patent. The character of the Government's action was triggered when the "takings" caused a permanent invasion of the Plaintiff's property and eliminated all economically beneficial uses of such property by way of the Government's "takings" of Plaintiff's '990 patent.

48.     It is the belief of the Plaintiff that the Claims Court ("Government") decision to proceeded only on the 28 U.S.C. § 1498(a), "Government Infringement" claims,  has allowed the DOJ ("Government"),  and the Claims Court ("Government") to improperly "take" nine independent patent claims (1-9) of the '189 patent, eleven independent claims (13-23) of the '439 patent, and thirty-eight dependent claims (12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148) of the '990 patent on what was flagged "jurisdictional discovery". The character of the Government's action was triggered when the "takings" caused a permanent invasion of the

Plaintiff's property and eliminated all economically beneficial uses of such property by way of the Government's "takings" of Plaintiff's '990 patent.

49.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, the Declaration of Dr. Sriram Vishwanath, that the "Government" knew, or should have known, should have been stricken from the record because he owned and was co-inventor of several patents and patent applications that covers wireless technology involving a communication device and that the Patent Owner's RE43,990 patent antedated his patents. Plaintiff believes the Government's action resulted in the "takings" of Plaintiff's three independent patent claims (11, 74, and 81) of the '990 patent. Dr. Vishwanath's claims involving a communication device can be found in provisional application 62/266,701 filed on 12-13-2015 (one month after the close of the IPR filed by DHS); patent application 15/377,902 filed on 12-13-2016 @ [0013] "Communications devices may be, e.g. mobile devices such as cell phones which may communize wirelessly to other user devices or base stations, fixed devices such as stationary base stations or communications devices which communicate, e.g., send and/or receive, RF signals"; the patent 10,110,306 issued on 10-23-2018. Dr. Vishwanath also filed on 12/03/2012, "Wireless communication methods, systems, and computer program products". After reviewing the patent application [US 20130083722 A1 or 13/701,449], the Plaintiff realized the very thing Dr. Vishwanath was fighting so hard to take away from the Patent Owner, he was equally fighting to get for himself. "The brief from Cato and ACUF reiterates the private property right... intellectual property. These amici cite an 1876 ruling: 'A patent for an invention

is as much property as a patent for land. The right rests on the same foundation… Neither an individual nor the public can trench upon or appropriate what belongs to the other.'"

50.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, eighteen prior art publications the DOJ ("Government"), the

DHS ("Government"), the Claims Court ("Government"), and the PTAB Court ("Government") knew, or should have known, did not antedate the priority filings (11-17-04) of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow unqualified prior art is one of several ways the "Gov't" is "taking" the Patents asserted in Case No. 13-307C.

51.     It is the belief of the Plaintiff that when the Patent Owner introduced the Disclosure Document Deposit Request (Disclosure Document No. 565732) that was filed on Nov. 17, 2004 with the USPTO. The PTAB Court simply dismissed the document as being unimportant to the 2 ½ years spent prosecuting the RE43,990 patent asserted in the IPR; the estimated $45,000 dollars the Patent Owner spent on prosecuting the RE43,990 patent asserted in the IPR; and, the independent and dependent claims the Patent Owner will lose as a result of the PTAB Court choosing not to accept the Patent Owner's Disclosure Document. The Patent Owner's RE43,990 patent antedated Mostov's patent  under 102(b) and 102(e) – Mostov's Provisional Application 60/648,260 was filed on 01-28-2005. Plaintiff believes the Government's action resulted in the "takings" of Plaintiff's three independent patent claims (11, 74, and 81) of the '990 patent and Plaintiff's three substitute independent claims (154, 155, and 156) introduced in the IPR

52.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere

to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed

the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ

("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in

Case No. IPR2014-00714, three prior art patents (Astrin, Breed, and Mostov) that the DOJ

("Government"), the DHS ("Government"), the Claims Court ("Government"), the PTAB Court

("Government") knew, or should have known, did not antedate the priority filings (November

17, 2004)[1] of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow

unqualified prior art is one of several ways the "Government" is "taking" the Patents asserted in

Case No. 13-307 C.

| 53. Reference | Filing Date | Publication Date | Basis for anticipation |
|---|---|---|---|
| U.S. Patent Application Publication No. 2006/0250235 ("Astrin") | | 11/09/2006 | 102(b) |
| U.S. Patent Application Publication No. 2006/0181413 ("Mostov") | 01/28/2005* | 08/17/2006 | 102(e) - 102(b) |
| U.S. Patent No. 7,961,094 ("Breed") | 11/29/2007 | | 102(e) |

* Mostov's Provisional Application [60/648,260] was filed on 01-28-2005. Plaintiff's Disclosure Document [565732] was filed on November 17, 2004.

---

[1]The Reissue U.S. Patent No. 43,990 patent ("'990 patent") is a reissue divisional of U.S. Patent No. 7,636,033 patent ("'033 patent") issued from U.S. Patent Application No. 12/155,573 ("'573 application") which is a continuation-in-part of the U.S. Patent Application No. 11/397,118 ("'118 application"), now U.S. Patent No. 7,385,497, ("'497 patent"). '118 application was filed on April 5, 2006 and a Disclosure Document Deposit Request (Disclosure Document No. 565732) was filed on November 17, 2004.  The DOJ ("Government") and the DHS ("Government") alleged that the following references were available as prior art under 35 U.S.C. 102(b) and (e) and therefore anticipate claims 11, 71 and 81 of the'990 patent.

54. It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, eighteen prior art publications the DOJ ("Government"), the

DHS ("Government"), the Claims Court ("Government"), and the PTAB Court ("Government") knew, or should have known, did not antedate the priority filings (November 17, 2004) of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow unqualified prior art is one of several ways the "Government" is "taking" the Patents asserted in Case No. 13-307 C.

55. It is the belief of the Plaintiff that when the Patent Owner introduced the Disclosure Document Deposit Request (Disclosure Document No. 565732) that was filed on Nov. 17, 2004 with the USPTO to the PTAB, the PTAB Court simply dismissed the document as being unimportant to the 2 ½ years spent prosecuting the RE43,990 patent asserted in the IPR; the estimated $45,000 dollars the Patent Owner spent on prosecuting the RE43,990 patent asserted in the IPR; and, the independent and dependent claims the Patent Owner will lose as a result of the PTAB Court choosing not to accept the Patent Owner's Disclosure Document. The Patent Owner's RE43,990 patent antedated Mostov's patent under 102(b) and 102(e) – Mostov's Provisional Application 60/648,260 was filed on 01-28-2005. Plaintiff believes the Government's action resulted in the "takings" of Plaintiff's three independent patent claims (11, 74, and 81) of the '990 patent and Plaintiff's three substitute independent claims (154, 155, and 156) introduced in the IPR.

56.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, the Declaration of  Dr. Sriram Vishwanath, that the DOJ ("Government"), the DHS ("Government"), the Claims Court ("Government"), the PTAB Court ("Government") knew, or should have known, did not antedate the priority filings (November 17, 2004) of the Plaintiff's inventions. The Plaintiff believes the Government's action to allow an unqualified declaration as prior art is one of several ways the "Government" is "taking" the Patents asserted in Case No. 13-307 C.

57.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714, the redundancy rulings of the PTAB Court ("Government"), that the DOJ ("Government"), the DHS ("Government"), the Claims Court ("Government"), the PTAB Court ("Government") knew, or should have known, that during the institution review of the Petitioners' petition for Inter Partes Review (IPR) and the Patent Owner's opposition to the IPR, the PTAB Court dropped Mostov as being redundant. The Patent Owner's patent [RE43,990] still antedated Astrin and Breed and the Patent Owner continued to argue Mostov throughout the proceedings. After eighteen months of litigation cost and time in the PTAB Court, the PTAB issued its Final Decision. In the PTAB Court's Final Decision, the PTAB added the Mostov patent back and dismissed the Astrin and Breed Patents as unqualified prior art. In *CRFD*

*Research Ltd. v. Matal*, No. 2016-2198 (Fed. Cir. Dec. 5, 2017), the Federal Circuit determined that the PTAB erred in its obviousness analysis, in part by failing to consider an argument the IPR petitioner made in a ground that the PTAB determined was "redundant" to the instituted grounds. The PTAB erred in its analysis, according to the court, because Hulu expressly incorporated this argument in the instituted grounds, and the court determined that to refuse to consider this argument "would also raise questions about the propriety of the Board's redundancy decision." Plaintiff believes the Government's action to allow the opinions expressed in the PTAB's Final Decision to be used as a guide for the direction the Claims Court should adjudicate, is one of several ways the "Government" is "taking" the Patents asserted in Case No. 13-307 C.

58.     It is the belief of the Plaintiff that the Claims Court ("Government") fail to adhere to the proper or accepted standard of proceedings when the Claims Court ("Government") stayed the Plaintiff's 28 U.S.C. § 1498(a), "Government Infringement" claims to allow the DOJ ("Government"), and the DHS ("Government") to litigate in the PTAB Court ("Government"), in Case No. IPR2014-00714—under the allowed statues of 35 U.S.C. 102 and 35 U.S.C. 103—that the DOJ ("Government"), the DHS ("Government"), the Claims Court ("Government"), the PTAB Court ("Government") knew, or should have known, the rules governing the IPR proceedings, only allow the petition under 35 U.S.C. 102 and 35 U.S.C. 103. Petitioner's IPR petition included objections: 35 U.S.C. 101, "Operability"; 35 U.S.C. 112, "Lack of Utility"; 35 U.S.C. 112, "Indefiniteness"; 35 U.S.C. 120 "Benefit of Earlier Filing Date"; and, 35 U.S.C. 102, "Anticipation" beyond the standard "single prior art patent" to "three prior art patents". The Patent Owner introduced three substitute claims because the PTAB Court allowed the written description objection. If the PO had left the description (§ 112) in the claims would have held

invalid and because I took the description (§ 112) out the claims were said to be invalid because

of broadening.   Either way the Plaintiff claims was going to be "taken" by the PTAB

("Government"). "The PTAB may institute IPR proceedings only on the basis of certain prior

art that is potentially invalidating under § 102 (novelty) or § 103 (obviousness).   The PTAB

may not institute IPR on any other unpatentability grounds, including, for example, § 101

(patentable subject matter) or § 112 (definiteness, enablement, written description)". Plaintiff

believes the Government's action resulted in the "takings" of Plaintiff's three independent patent

claims (11, 74, and 81) of the '990 patent and Plaintiff's three substitute independent claims

(154, 155, and 156) introduced in the IPR.

59.     It is the belief of the Plaintiff that the independent claims 13, 14, 15, 22, and 23 of

the asserted Patent 9,589,439 in Case No. 13-307 C, are significantly the same as independent

claims 1, 2, and 3 of the asserted Patent 9,096,189 in Case No. 13-307 C, that covers the

Plaintiff's "communication device" and/or "monitoring device", are significantly the same as

Reissued Patent RE43,990 independent claim 11. Plaintiff believes the Government's action

resulted in the "takings" of the independent patent claims listed above of the '439, '189, and '990

patent.

60.     It is the belief of the Plaintiff that the Claims Court ("Government"), which

initiated the unfair and unjust proceedings that was held at the PTAB Court ("Government") in

Case No. IPR2014-00714 participated in the "takings" of independent claims 11, 74, and 81 of

the '990 patent by allowing the unfair and unjust decisions of the PTAB Court ("Government")

to be carried over into Case No. 13-307 C.

61.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken"

independent claim 11 of the '990 patent; and, has "taken" the Plaintiff's use of independent

claims 13, 14, 15, 22, and 23 of the asserted '439 patent as substitute claims for independent claim 11 of the '990 patent in Case No. 13-307 C.

62.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of independent claims 1, 2, and 3 of the asserted '189 patent as substitute claims for independent claim 11 of the '990 patent in Case No. 13-307 C.

63.     It is the belief of the Plaintiff that the DOJ ("Government"), the DHS ("Government"), the PTAB Court ("Government"), and the Claims Court ("Government"), has unfairly and unjustly "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148 of the '990 patent asserted in Case No. 13-307 C which depends on independent claims 11, 74, and 81 of the '990 patent that was unfairly and unjustly "taken" by the "Government".

64.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135, 148 of the ('990) patent asserted in Case No. 13-307 C which depends on the substitute independent claims 13, 14, 15, 22, and 23 of the asserted '439 patent and the independent claims 1, 2, and 3 of the asserted '189 patent, that are substantially and significantly the same as independent claim 11 of the '990 patent.

65.     It is the belief of the Plaintiff that the "takings" of the independent claims by the "Government" of the '439 and '189 patents that are substantially and significantly the same as independent claim 11 of the '990 patent, and the "takings" by the "Government" of the dependent claims of the '990 patent that depends on the substitute independent claims of the

'439 and '189 patents has resulted in a reduction in value of the Plaintiff's property by virtue of the "Government" dismissal of claims, access, disclosure, manufacture, development or use, by or for the Government and its third party awardees; has destroyed the Plaintiff's competitive edge; has had a substantial adverse impact (means unfavorable or harmful; preventing success or development) on "the reasonable investment-backed expectations" of the Plaintiff.

66.    It is the belief of the Plaintiff that the independent claims 16, 17, and 18 of the asserted Patent 9,589,439 in Case No. 13-307 C, are significantly the same as independent claims 4, 5, and 6 of the asserted Patent 9,096,189 in Case No. 13-307 C, that covers the Plaintiff's "communication device" and/or "monitoring device", are significantly the same as Reissued Patent RE43,990 independent claim 74. Plaintiff believes the Government's action resulted in the "takings" of the independent patent claims listed above of the '439, '189, and '990 patent.

67.    It is the belief of the Plaintiff that the Claims Court ("Government"), which initiated the unfair and unjust proceedings that was held at the PTAB Court ("Government") in Case No. IPR2014-00714 participated in the "takings" of independent claims 11, 74, and 81 of the '990 patent by allowing the unfair and unjust decisions of the PTAB Court ("Government") to be carried over into Case No. 13-307 C.

68.    It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" independent claim 74 of the '990 patent; and, has "taken" the Plaintiff's use of independent claims 16, 17, and 18 of the asserted '439 patent as substitute claims for independent claim 74 of the '990 patent in Case No. 13-307 C.

69.    It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of independent claims 4, 5, and 6 of the asserted '189 patent as substitute claims for independent claim 74 of the '990 patent in Case No. 13-307 C.

70.     It is the belief of the Plaintiff that the DOJ ("Government"), the DHS

("Government"), the PTAB Court ("Government"), and the Claims Court ("Government"), has

unfairly and unjustly "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21,

22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119,

122, 124, 126, 132, 134, 135, 148 of the '990 patent asserted in Case No. 13-307 C which

depends on independent claims 11, 74, and 81 of the '990 patent that was unfairly and unjustly

"taken" by the "Government".

71.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken"

the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31,

32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135,

148 of the '990 patent asserted in Case No. 13-307 C which depends on the substitute

independent claims 16, 17, and 18 of the asserted '439 patent and the independent claims 4, 5,

and 6 of the asserted '189 patent, that are substantially and significantly the same as independent

claim 74 of the '990 patent.

72.     It is the belief of the Plaintiff that the "takings" by the "Government" of the

independent claims of the '439 and '189 patents that are substantially and significantly the same

as independent claim 74 of the '990 patent, and the "takings" by the "Government" of the

dependent claims of the '990 patent that depends on the substitute independent claims of the

'439 and '189 patents has resulted in a reduction in value of the Plaintiff's property by virtue of

the "Government" dismissal of claims, access, disclosure, manufacture, development or use with

or for the public's benefit; by or for the "Government" and its third party awardees; has

destroyed the Plaintiff's competitive edge; has had a substantial adverse impact (means

unfavorable or harmful; preventing success or development) on "the reasonable investment-backed expectations" of the Plaintiff.

73.     It is the belief of the Plaintiff that the independent claims 19, 20, and 21 of the asserted Patent 9,589,439 in Case No. 13-307 C, are significantly the same as independent claims 7, 8, and 9 of the asserted Patent 9,096,189 in Case No. 13-307 C, that covers the Plaintiff's "communication device" and/or "monitoring device", are significantly the same as Reissued Patent RE43,990 independent claim 81. Plaintiff believes the Government's action resulted in the "takings" of the independent patent claims listed above of the '439, '189, and '990 patent.

74.     It is the belief of the Plaintiff that the Claims Court ("Government"), which initiated the unfair and unjust proceedings that was held at the PTAB Court ("Government") in Case No. IPR2014-00714 participated in the "takings" of independent claims 11, 74, and 81 of the '990 patent by allowing the unfair and unjust decisions of the PTAB Court ("Government") to be carried over into Case No. 13-307 C.

75.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" independent claim 81 of the '990 patent; and, has "taken" the Plaintiff's use of independent claims 19, 20, and 21 of the asserted '439 patent as substitute claims for independent claim 81 of the '990 patent in Case No. 13-307 C.

76.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken" the Plaintiff's use of independent claims 7, 8, and 9 of the asserted '189 patent as substitute claims for independent claim 81 of the '990 patent in Case No. 13-307 C.

77.     It is the belief of the Plaintiff that the DOJ ("Government"), the DHS ("Government"), the PTAB Court ("Government"), and the Claims Court ("Government"), has unfairly and unjustly "taken" the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21,

22, 23, 25, 26, 28, 29, 30, 31, 32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119,

122, 124, 126, 132, 134, 135, 148 of the '990 patent asserted in Case No. 13-307 C which

depends on independent claims 11, 74, and 81 of the '990 patent that was unfairly and unjustly

"taken" by the "Government".

78.     It is the belief of the Plaintiff that the Claims Court ("Government") has "taken"

the Plaintiff's use of dependent claims 12, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 30, 31,

32, 35, 39, 41, 44, 55, 78, 79, 92, 97, 99, 104, 108, 113, 118, 119, 122, 124, 126, 132, 134, 135,

148 of the ('990) patent asserted in Case No. 13-307 C which depends on the substitute

independent claims 19, 20, and 21 of the asserted '439 patent and the independent claims 7, 8,

and 9 of the asserted '189 patent, that are substantially and significantly the same as independent

claim 81 of the '990 patent.

79.     It is the belief of the Plaintiff that the "takings" by the "Government" of the

independent claims of the '439 and '189 patents that are substantially and significantly the same

as independent claim 81 of the '990 patent, and the "takings" by the "Government" of the

dependent claims of the '990 patent that depends on the substitute independent claims of the

'439 and '189 patents has resulted in a reduction in value of the Plaintiff's property by virtue of

the "Government" dismissal of claims, access, disclosure, manufacture, development or use with

or for the public's benefit; by or for the "Government" and its third party awardees; has

destroyed the Plaintiff's competitive edge; has had a substantial adverse impact (means

unfavorable or harmful; preventing success or development) on "the reasonable investment-

backed expectations" of the Plaintiff.

80.     It is the belief of the Plaintiff that the Claims Court ("Government") abused its

discretion by disallowing the Plaintiff to bring an action against, or filed in its pleadings a claim

against the Department of Justice (DOJ), more specifically an agency that operates under the DOJ's umbrella; the National Institute of Justice (NIJ). The Plaintiff had an alleged infringement claim against the NIJ. But when the issue was discussed in a teleconference hearing (Transcript; December 02, 2016; Discovery). The Court disallowed the Plaintiff the opportunity to litigate finding against the NIJ. Judge Braden states in a teleconference hearing on December 2, 2016; "there is no such thing as the National Institute of Justice". NIJ is the research, development and evaluation agency of the U.S. Department of Justice. NIJ awards grants and agreements for: Research, development and evaluation (CFDA 16.560). NIJ funds physical and social science research, development and evaluation projects about criminal justice through competitive solicitations. The focus of the solicitations varies from year to year based on research priorities and available funding. As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation..."

81.     It is the belief of the Plaintiff that Judge Braden's "lack of impartiality" is the only logical explanation to why Judge Braden issued on November 30, 2016 a Memorandum Opinion and Order Denying the Government's Motion to Dismiss (Dkt. No. 94) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In a teleconference hearing just two (2) days later on December 2, the Judge favored the DOJ ("Government") by giving them another chance "a do-over" to file another Motion to Dismiss pursuant to Rules 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure on the very same devices she just ruled on (Transcript; December 02, 2016; Discovery). Under normal procedures the Department of Justice ("Government") would have at least had to ask to Judge for a chance to "redo" it over again and at least state the reason(s) why. The proper procedure would have been for the Department of Justice ("Government") to ask for leave of the Court to file a Motion for Re-consideration, stating the reason(s) why. If all else fails, the Department of Justice ("Government") could file a Motion of Appeal to the U.S. Court of Appeals for the Federal Circuit (CAFC), stating the reason(s) why. Judge Braden never gave an explanation to "why" she took it upon herself to grant the Department of Justice ("Government") leave to file another Motion to Dismiss on the same devices. The Plaintiff was ordered to do jurisdictional discovery on the same devices the he had done jurisdictional discovery on and had submitting his findings in a Response (Dkt. No.90; filed 07/05/2016) to the Government's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation…"

82.     It is the belief of the Plaintiff that the Claims Court ("Government") abuse its discretion by inappropriately and improperly, diverting and redirecting this case away from the products, devices, methods and processes the Plaintiff has alleged is being infringed by the Government to falsely accusing the Plaintiff of stating a Broad Agency Announcement (BAA) is

a contract. Judge Braden initially states in her Opinion denying the Government's Motion to dismiss Certain Devices filed on November 30, 2016 (Dkt. No. 94). "*Hughes Aircraft Co.*, 534 F.2d at 898 (finding that the government's participation in a satellite program was "for the Government," because the program was vital to the military defense and security of the United States). Moreover, under section 1498(a), "Government authorization or consent" can be implied by circumstances. See TVI Energy Corp, 806 F.2d at 1060'. In this case, the February 12, 2016 Amended Complaint alleges that DHS contracted with iControl to develop and commercialize M-Lock. This contractual relationship supports a reasonable inference that the Government authorized the manufacture and use of the infringing device." Therefore, it was the M-Lock the Plaintiff is alleging the Government is infringing, not the contract with iControl. The Judge later states in her opinion on March 29, 2018 "**e. Patent Infringement Allegations Concerning Broad Agency Announcements Must Be Dismissed Under RCFC 12(b)(6)...** As a result of contracts with the [DNDO], Passport Systems, Inc., Panasonic Corporation, and the Samsung Group for the development and commercialization of the l"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; 2"x2" Detection Device (DD) Samsung Galaxy s6 Smartphone; NetS2 SmartShield G300 Radiation Detector Samsung Galaxy s6 Smartphone; NetS2 SmartShield G500 Radiation Detector Samsung Galaxy s6 Smartphone; and the Passport Systems Base Control Unit (BCU) "TOUGHBOOK 31" Panasonic Laptop... Indeed, the Fifth Amended Complaint fails to identify a single "contract" with the DNDO. Instead, it alleges only that the DNDO issued a BAA; a BAA, however, is not a "contract." *See* 48 C.F.R. § 2.101(b) (defining a "BAA" as "a general announcement of an agency's research interest including criteria for selecting proposals and soliciting the participation of all offerors capable of satisfying the Government's needs"). Again, without more, the Fifth Amended Complaint has not met the

requirements of *Twombly* and *Iqbal*. And, conclusory allegations that the Government used or authorized the use of the "Samsung Galaxy s6 Smartphone" in a manner that infringes Plaintiffs patents are likewise insufficient, as such "(t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678; *see also Sioux Honey Ass 'n,* 672 F.3d at 1062 (holding that a complaint "require[s] more than labels and conclusions"). For these reasons, the court has determined that the patent infringement allegations contained in paras. 161-67 of the August 10, 2017 Fifth Amended Complaint must be dismissed under RCFC 12(b)(6)." Again, as noted above, the Plaintiff is alleging the Government is infringing the numerous devices manufactured as a result of contracts with DNDO, not the contracts themselves. As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation..."

83.     It is the belief of the Plaintiff that the Claims Court ("Government") abuse its discretion for failing to realize that according to the Tucker Act the Federal Claims Court has jurisdiction over all claims arising under a Federal Contract. Judge Braden initially states in her Opinion denying the Government's Motion to dismiss Certain Devices filed on November 30, 2016 (Dkt. No. 94). "The court has held that a research grant or cooperative agreements from the National Science Foundation (NSF) and the National Institute of Health (NIH) was a contract within Tucker Act jurisdiction. The National Science Foundation (NSF) and the National

Institute of Health (NIH) waiver of sovereign immunity under federal law within the Tucker Act, provides the United States Court of Federal Claims with jurisdiction over all claims arising under a Federal Contract and '[t]here is no further jurisdictional requirement that plaintiff make additional nonfrivolous allegation[s] that [he] is entitled to relief under the relevant money-mandating source'". Also, '[t]he February 12, 2016 Amended Complaint's NSF claims also allege sufficient facts to plausibly establish that the use of the accused devices was with the authorization or consent of the Government.' Authori-zation or consent can be implied from the circumstances." Judge Braden later states in her Opinion filed on March 29, 2018, (Dkt. No. 130). "The court does not have jurisdiction under 28 U.S.C. § 1498(a) to adjudicate patent infringement allegations concerning NSF and NIH grants and cooperative agreements, because any benefit to the Government, at best, would be incidental. In addition, none of the grants or cooperative agreements evidence any "express or implied authorization and consent by the [G]overmnent... Likewise, the award of NSF and NIH grants does not evidence implied authorization, because the Government does not direct or exercise control over the activities of awardees. Although the cooperative agreements may involve a measure of Government involvement, they do not contain any text evidencing Government "authorization [or] consent to infringe another's patent." As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation..."

84.     Upon information and belief, Judge Braden has "taken" all the independent claims asserted in the Final Amended Complaint of the '439 patent, and all of the independent claims in the Amended Complaint of the '189 patent that are the Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) devices (e.g. smartphones and other consumer devices). Sixty-one of the seventy-two alleged 28 U.S.C. 1498 "Government Infringement" claims of the Plaintiff in the Final Amended Complaint are relating to the Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) devices (e.g. smartphones and other consumer devices). Judge Braden made the following statement in the Memorandum Opinion and Order (Dkt. No. 130; filed 03/29/2018) "The paragraphs in the Fifth Amended Complaint that include patent infringement allegations "relating generally to smartphones and other consumer devices"… To support this allegation, the Fifth Amended Complaint repeatedly cites to paras… of the Fifth Amended Complaint. These paragraphs describe the Government's intent to "allow" or "approve" the "use" of various "smartphones and other consumer devices," e.g., "the iPhone… The Fifth Amended Complaint, however, does not allege that the Government's intent to "allow" or "approve" the use of "smartphones and other consumer devices" infringes Plaintiffs patents. Instead, the Fifth Amended Complaint alleges that the Government's use of these devices in combination with other "devices" or "programs," e.g., the "'Cell-All' initiative," infringes Plaintiffs patents… No factual allegations, however, support assuming that the Government used or authorized the use of these other "devices" or "programs" to infringe Plaintiffs patents… For these reasons, the court has determined that even if the August 10, 2017 Fifth Amended Complaint established jurisdiction as to the patent infringement allegations contained in paras… of the Fifth Amended Complaint, the allegations contained therein failed to state a claim upon which relief may be granted and must be dismissed under RCFC 12(b)(6)." The DOJ

("Government") and the Claims Court ("Government") denial and dismissive attitude that the

"use by or manufacture for the Government"; that there was never "authorization and consent";

that the Plaintiff "failed to state a claim upon which relief may be granted and must be dismissed

under RCFC 12(b)(6)"; and, private conduct incidentally benefitting the Government does not

constitute use "for the benefit of the Government", never existed, has resulted in the "takings" of

Plaintiff's patents. Referring back to paras. 11 and 12 of this document, the Plaintiff has

produced a CD **Vol. I, Appx2** of the "Cell-All" initiative and an outline of minutes of where

certain information can be viewed that rebuts the opinion of the Claims Court. It is the belief of

the Plaintiff that the Government has "taken" the Plaintiff's '439 and '189 patents so that a

determination of whether the Government has infringed Plaintiff's patents cannot be made.

85.     It is the belief of the Plaintiff, that Judge Braden's "Lack of Impartiality" in the

Case (13-307 C) of ordering the Plaintiff to produce **all** of his discovery to the DOJ and never

ordered the DOJ to do the same, created an unfair advantage for the DOJ and has resulted in the

eventual "takings" of Plaintiff's patents. On May 24, 2017, the court convened a telephone status

conference. Pursuant to the status conference, the court grants Plaintiff leave to file a Final

Amended Complaint and a Final Amended Claim Chart by August 15, 2017. The court ordered

the Plaintiff in the telephone status conference: "to file a clean amended complaint that includes

**all** of your [Plaintiff] concerns, **all** of your [Plaintiff] charges against the Government in one

document"… "You're going to put together a **whole** fifth and final complaint and a final claim

chart, two documents". Judge Braden later states in her Opinion filed on March 29, 2018: Dkt.

No. 130) "The Fifth Amended Complaint also fails to allege that "the accused use or

manufacture was undertaken ... for the Government's benefit." *See Hughes Aircraft Co.,* 534 F.2d

at 897. The Fifth Amended Complaint contains no <u>factual</u> allegations establishing anything more

than "incidental benefit" to the NSF. *See Advanced Software Design Corp.,* 583 F.3d at 1379

(holding that "an interest in [a] program generally, or [where the Government] funds or

reimburses all or part of [a program's] costs, is too remote to make the [G]overnment the

program's beneficiary for the purposes underlying § 1498" (quoting *Larson,* 26 Cl. Ct. at 369));

*see also IRIS Corp.,* 769 F.3d at 1362 ("Incidental benefit to the [G]overnment is insufficient" to

satisfy the requirements of 28 U.S.C. § 1498(a).). Nor does the Fifth Amended Complaint allege

that "the Government gave its authorization or consent for the accused use or manufacture." *See*

*Hughes Aircraft Co.,* 534 F.2d at 897. The Fifth Amended Complaint does not contain any

factual allegations establishing that the NSF, at any time, authorized or consented to infringing

use or manufacture. For example, the Fifth Amended Complaint does not cite any portions of the

NSF grants or communications between the NSF and grant awardees "expressly" or "implicitly"

authorizing infringing conduct. *See Larson,* 26 Cl. Ct. at 369-70 ("[A]uthorization or consent

requires explicit acts or extrinsic evidence sufficient to prove the [G]overnment's intention to

accept liability for a specific act of infringement."). Nor does the Fifth Amended Complaint

include any factual allegations that could be construed as "express" or "implicit" authorization or

consent by the NSF to infringe Plaintiffs patents. *See Hughes Aircraft Co.,* 534 F.2d at 901

(holding that implied authorization may be presumed when the Government provides

"instructions ... specifications [,] or drawings which impliedly sanction and necessitate

infringement"); *see also IRIS Corp.,* 769 F.3d at 1362 (holding that "the [G]overnment ... clearly

provided its authorization or consent [,] because [the contractor] ... cannot comply with its legal

obligations without engaging in the allegedly infringing activities"). Instead, each of the NSF

grants incorporated a standard clause advising that the NSF "cannot assume any liability for ...

claims arising out of any work supported by an award for unauthorized use of patented ...

materials" or, more generally, "with respect to ... property of ... third parties." Therefore,

awardees were warned that the use of "property of ... third parties," including "patented ...

materials," was "unauthorized." *See Carrier Corp.,* 534 F.2d at 247-49 (holding that the

Government "cap limit ... authorization and consent" by "inclusion ... of a standard clause [that]

limits the Government's authorization and consent"). For these reasons, the court has determined

that the patent infringement allegations contained in paras. 184-85, 199-200, 235-36, 260-61,

265-66, 270-71, 275-76, 280-81, 285-86, 290-91, 295-96, 300-01, 305-06, and 350-51 of the

August 10, 2017 Fifth Amended Complaint failed to satisfy Plaintiffs burden to establish

jurisdiction under 28 U.S.C. § 1498(a). Further, the Government failed to produce the findings of

the at least seventy-two Freedom of Information (FOIA) Request relating to the seventy-two

infringement Claims asserted in Case No. 13-307 C. The Plaintiff submitted three hundred,

seventy-six FOIA requests to the DOJ ("Government"); the Claims Court ("Government"), and

the numerous various "Government" agencies in the third quarter of the year 2015. Included

were the seventy-two infringement claims asserted in the Case No. 13-307 C. Plaintiff did not

receive from the DOJ ("Government") and the Claims Court ("Government"), and the numerous

various "Government" agencies any of the information requested and needed to answer the

<u>factual</u> requirements of Judge Braden in a jurisdictional discovery. As a result of the Government

actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189,

'891, and '990 patents.

      86.    It is the belief of the Plaintiff that the Claims Court ("Government") has erred in

its decision regarding pre and post issuance. Judge Braden made the following statement in the

Memorandum Opinion and Order (Dkt. No. 130; filed 03/29/2018). "**g. Patent Infringement**

**Allegations Concerning Unissued Patent Applications and Pre-Issuance Use or**

**Manufacture Must Be Dismissed Under RCFC 12(b)(l)...**The Government argues that patent infringement allegations concerning... pre-issuance use or manufacture of the '439 Patent should be dismissed under RCFC 12(b)(l)... the '439 Patent issued on March 7, 2017, but the Fifth Amended Complaint alleges infringement of the '439 Patent, based on Government "programs" that were cancelled in April 2014, almost three years prior to issuance of the '439 Patent (a June 10, 2014 United States Government Accountability Office Report, explaining the DHS's decision to cancel the "Bio Watch Gen-3" program in April 2014). In addition, the Fifth Amended Complaint alleges infringement of the '439 Patent, based on NSF grants that expired prior to issuance of the '439 Patent. Am. Comp. paras. 184-85, 199-200, 260-61, 275-76, 280-81, 295-96, and 305-06. The court's jurisdiction under 28 U.S.C. § 1498(a) is limited to allegations "against the [G]overnment arising out of post-issuance [G]overnment use [or manufacture] of an invention." The Plaintiff has demonstrated he has a right to receive post-issuance damages for the ongoing and continuing use and manufacture of the seventy-two (72) alleged infringing products, devices, etc. Plaintiff never alleged infringement of a Government contract, solicitation, grant, or program (i.e. DNDO solicitation; NSF and NIH grants; Bio-Watch Gen 3 program). The Plaintiff is alleging the Government is infringing the numerous devices manufactured as a result of contracts, solicitations, grants, or programs, not the contracts, solicitations, grants, or programs themselves. The Plaintiff has further demonstrated he has a right to receive pre-issuance damages because the Plaintiff has satisfied the "actual notice" requirement and the "substantially identical" requirement under Section 154(d). As to damages, the jury awarded $1,405,708 in lost profit damages starting in September 2007, the time of the patent's issuance, and $167,455 in reasonable-royalty damages for the pre-issuance period starting in October 2006, the date the patent application was published. With respect to pre-

issuance damages, the district court had already ruled, in denying a summary-judgment motion by MGA, that such damages would be permissible under 35 U.S.C. § 154(d) because the scope of the issued claims are substantially identical to the scope of the published application's claims. That case, *Innovention Toys, LLC v. MGA Entm't, Inc.*, 611 Fed. Appx. 693, 695 (Fed. Cir. 2015), explained that "[C]laims are 'identical' to their original counterparts if they are 'without substantive change.'" As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation…"

87.     It is the belief of the Plaintiff that Judge Braden erred in her decision to allow the opinions of the PTAB Court ("Government") to be entered into this Case No. 13-307 C. The Claims Court ("Government") and the PTAB Court ("Government") cooperatively, alone with the DOJ ("Government"), in collaboration, join forces to proceed with the "Takings" of Plaintiff's independent claims 11, 74, and 81 of the '990 Patent in the Inter Partes Review (IPR); independent substitute claims 154-156 asserted in the Inter Partes Review (IPR), and dependent claims of the '990 Patent asserted in this Case No. 13-307 C. The Plaintiff asserted in Case No. 13-307 C, the substitute independent claims of the '439 patent that the dependent claims of the '990 Patent depend on, in at least fifty-nine (59) of the infringement claims of Case No. 13-307 C. The DOJ ("Government") in its Motion; DEFENDANT THE UNITED STATES' LIST OF REMAININC PATENT INFRINGEMENT CLAIMS & REOUEST FOR STATUS

CONFERENCE; Case 1:13-cv-00307-EGB Document 148 Filed 11/02/18; GOVERNMENT'S

LIST OF REMAINING PATENT INFRINGEMENT CLAIMS writes: "In answer to the Court's

Orders, the Government submits that the following patent allegations[2] have not been expressly

addressed by the Court... [2]The cited references are the accused instrumentalities identified in

Plaintiff's Fifth Amended Complaint. DKT. 120, Complaint. For clarity we have also provided

the particular patents and claims of those patents that are alleged to be infringed. The list does

not include instances where Plaintiff asserted dependent claims (i.e., of the dismissed '439

Patent), but did not allege infringement of the underlying independent claim." Senior Judge Eric

G. Bruggink; Order; Case 1:13-cv-00307-EGB Document 151 Filed 11/28/18 writes: "Plaintiff

does not dispute that the eighteen claims at issue only allege infringement of dependent patent

claims. As a matter of law, infringement of dependent patent claims is insufficient to

demonstrate infringement of the patent entitling Plaintiff to compensation... Since Plaintiff could

not prevail on its infringement claim, there is no reason for these patent claims to proceed to

claim construction. The court therefore grants defendant summary judgement regarding the

eighteen patent infringement allegations at issue. The eighteen patent infringement allegations

set forth in the chart at the bottom of this order are dismissed." As a result of the Government

actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439' and

'990 patents and has **open the door for the continued use by the government of Plaintiff's**

**inventions without paying just compensation**.

88.    Upon information and belief Judge Braden, in the Memorandum Opinion filed on

March 29, 2018 in Case No. 13-307 C, inability to clarify exactly what infringement claims was

actually dismissed for lack of jurisdiction has resulted in confusion amongst the Partes and the

current presiding Judge. When Plaintiff asked Judge Braden what infringement claims were

dismissed for lack of jurisdiction, she couldn't provide that information (see the Transcript of

August 17, 2018). Instead the Judge granted authority to the DOJ (Defendant) to pick-and-chose

what infringement claims they believe were dismissed (this of course created a conflict of

interest). The "Government" determined all of the fifty-nine (59) infringement claims involving

the '439 patent was dismissed. When the Plaintiff provided the DOJ ("Government") with a

worksheet list of all seventy-two infringement claims and ask the DOJ ("Government") to check

off which of the seventy-two infringement claims was dismissed because of lack of jurisdiction

the DOJ ("Government") could not provide the answers. When the Plaintiff provided the Claims

Court ("Government"); Senior Judge Eric G. Bruggink presiding, with the same worksheet list of

all seventy-two infringement claims and ask the Claims Court ("Government") to check off

which of the seventy-two infringement claims was dismissed because of lack of jurisdiction the

Claims Court ("Government"); Senior Judge Eric G. Bruggink presiding, could not provide the

answers. As a result of the Government actions outlined above, Plaintiff believes the

"Government" has "taken" Plaintiff's '439' and '990 patents and has **open the door for the**

**continued use by the government of Plaintiff's inventions without paying just**

**compensation**.

89.     It is the belief of the Plaintiff that Senior Judge Eric G. Bruggink has decided to

continue with the "Takings" efforts of the DOJ ("Government) and the Claims Court

("Government") Judge Susan Braden. The Plaintiff has tried on several occasions to "fix" the

problems by submitting Motions, only to have those Motions denied or stricken from the record.

Plaintiff was also ordered not to submit any more Motions. Senior Judge Eric G. Bruggink;

Order; Case 1:13-cv-00307-EGB Document 151 Filed 11/28/18 writes: "Next, to the extent that

plaintiff's submission can be construed as a motion pursuant to RCFC 60(b), the court denies

44

plaintiff's motion for relief from the March 29, 2018 opinion granting in part defendant's motion to dismiss. Plaintiff has not demonstrated that any of the grounds listed in RCFC 60(b)(1)-(6) are present that would entitle him to relief from dismissal of the patent infringement allegations addressed in that opinion…Likewise, to the extent plaintiff's submission can be construed as a motion for reconsideration under RCFC 59(a)(1) of the March 29, 2018 opinion granting in part defendant's motion to dismiss or the denial of plaintiff's motion for entry of a final judgement or for a certificate of appeal pursuant to RCFC 54(b), the court denies plaintiff's motion." As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**.

90.     It is the belief of the Plaintiff that Senior Judge Eric G. Bruggink has decided to continue with the "Takings" efforts of the DOJ ("Government) and the Claims Court ("Government") Judge Susan Braden. The Plaintiff filed a response (Case 1:13-cv-00307-EGB Document 156 Filed 01/09/19) to Senior Judge Eric G. Bruggink; Order (Case 1:13-cv-00307-EGB Document 151 Filed 11/28/18). The Judge docketed the Response under "Notice" when in fact it was a request for discovery documents. The Judge fail to "Order" the DOJ ("Government) to produce the discovery documents. The Plaintiff writes in the response: "Before the Plaintiff can respond to the Claim Court's order, '[i]f Plaintiff can identify post-issuance activity incorporated within these paragraphs that is not otherwise dismissed, the court will reconsider dismissal of those relevant portions', the Plaintiff specifically seeks all documents relating to (a)- request for proposals or applications; (b)- the awards, contracts, agreements or grants made to the third parties that includes the authorization and consent; (c)- the name of the products, devices, etc. and, (d)- date of commercialization for the seventy-two products, devices, etc. The Claim

Court has provided the Government with the tools to retrieve those documents from the various Government Agencies in the past (See the December 2, 2016 Transcript) and should therefore not have a problem doing the same. Plaintiff has a right to all of the Government's discovery documents pertaining to this case, but has not yet received any." As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**.

91.      It is the belief of the Plaintiff that United States Court of Appeals for the Federal Circuit (CAFC) has decided to continue with the "Takings" efforts of the DOJ ("Government) and the Claims Court ("Government"). The Plaintiff filed a PETITION for Writ of Mandamus (with appendix) pursuant to Fed. R. App. P. 21 by Petitioner Larry Golden. Service: 09/28/2018 by US mail. [554658] [MJL] [Entered: 10/03/2018 04:40 PM]. The CAFC ("Government") denied the petition and writes: Mr. Golden filed this petition asking the court to either adjudicate his takings claims or to direct the Claims Court to decide them... First, Mr. Golden has not clearly and indisputably shown that the Claims Court erred in staying his takings claims. The Claims Court concluded that those takings claims appeared to be duplicative of his claims under § 1498(a). Adjudication of the takings claims could therefore await adjudication of the § 1498(a) claims. That determination has not been shown to be clearly contrary to the law or the record here. Second, Mr. Golden has not shown that any delay here on the part of the Claims Court in adjudicating Mr. Golden's claims is so egregious as to warrant mandamus relief. The Claims Court has adjudicated a number of the claims asserted by Mr. Golden and has recently sought input from the parties as to what remains and how the case should proceed. We expect that all claims in the case will now be addressed. Moreover, any delay in reaching a final

46

decision in this case is in no small way attributable to Mr. Golden's own strategy of adding

claims every time he believes the government has prolonged this case. Finally, Mr. Golden has

not shown entitlement to mandamus relief concerning the Claims Court's rejection of his motion

to supplement his complaint, denial of his motion for summary judgment, and determinations

concluding his claims, because he has not shown that an appeal after a final judgment in the case

is not an adequate alternative means to obtain the relief he seeks. Plaintiff believes that at any

time a case is filed by a Complainant under the statue 28 U.S.C. § 1491(a) "Government Takings

of a Patent under the Fifth Amendment Clause" the Claims Court's options are to dismiss the

case for lack of subject matter jurisdiction or to adjudicate the case as is. It is not within the

Claims Court authority to change, at their discretion, the statue for which the Complainant has

filed simply because the DOJ ("Government") and the Claims Court ("Government") believes

the § 1491(a) appeared to be duplicative of his claims under § 1498(a). There were no claims

under the § 1498(a) because the Plaintiff had not officially introduced any when the Judge made

that decision for the Plaintiff. What law states, as the Appeals Court ("Government") has

determined, "[a]djudication of the takings claims could therefore await adjudication of the §

1498(a) claims? Therefore it is contrary to the law or record. The Plaintiff has a right, according

to the 28 U.S.C. § 1498(a) that states: "Whenever an invention described in and covered by a

patent of the United States is used or manufactured by or for the United States without license of

the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by

action against the United States in the United States Court of Federal Claims for the recovery of

his reasonable and entire compensation for such use and manufacture", to continue filing

infringement claims against the Government. The key word in the statue is "Whenever". It

means "at any time"; at all times"; "at whatever time"; "on whatever occasion", and, it also

means, "a lack of restriction". It doesn't matter that the Plaintiff increased the number of infringement claims when the Claims Court ("Government") ordered the Plaintiff to do in the Amended Complaint (Dkt. No. 68, filed on 02/12/2016) and the Final Amended Complaint (Dkt. No. 120, filed on 08/10/2017). The reason for the delay in time is because the Claims Court ("Government") changed the statue. As a result of the Government actions outlined above, Plaintiff believes the "Government" has "taken" Plaintiff's '439', '189, '891, and '990 patents and has **open the door for the continued use by the government of Plaintiff's inventions without paying just compensation**. In *Horne v. Department of Agriculture,* 2012, Chief Justice Roberts, writing for the Court, cited a Supreme Court opinion from the late nineteenth century: "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation…"

### RELIEF SOUGHT

92.     Plaintiff respectfully requests the following relief:

A. entry of a judgment in favor of Plaintiff against Defendant ("Government") on all of Plaintiff's claims;

B. entry of a judgment that Defendant has "Taken" Plaintiff's property within the meaning of the Fifth Amendment to the United States Constitution;

C. entry of judgment awarding Plaintiff his full and just compensation, in an amount to be proven at trial, for the Defendant's ("Government") unconstitutional "taking" of Plaintiff's property, including but not limited to expected royalties and other payments related to use of the patents;

D. an accounting for damages suffered by Plaintiff and judgment requiring Defendant ("Government") to compensate Plaintiff for such damages;

E.  an award of any pre-judgment and post-judgment interest, costs, fees, expenses, and attorneys' fees to which Plaintiff may be entitled; and

F.  such other and further relief as the Court may deem just and proper.

93.     Plaintiff, on behalf of itself, hereby asserts that the amount claimed to be owed by Defendant ("Government") is greater than $1 billion.

## CONCLUSION

The attached Exhibits are in support of the Petitioner's 28 U.S.C. § 1491 "Gov't Takings case:

EXHIBIT 1: Copy of the Plaintiff's Disclosure Document Deposit Request (Dis. Doc. No. 565732) filed at the USPTO on 11/17/2004.

EXHIBIT 2: Requirements for a 28 U.S.C. § 1491 "Fifth Amendment Government Takings of a Patent.

EXHIBIT 3: Additional Notices given the United States.

EXHIBIT 4: Sample "Testing Mechanism" Claim Chart for the 28 U.S.C. § 1491 "Gov't Takings.

EXHIBIT 5: Copy of the list Plaintiff provided to both the DOJ ("Government") and the Claims Court ("Government"); Senior Judge Eric G. Bruggink presiding, to check off which of the seventy-two infringement claims was dismissed for lack of jurisdiction (see paragraph 88 of this document).

Volume I, Appendix 1, CD of Discovery Documents

Volume I, Appendix 2, CD of Cell-All Project

Respectfully submitted,

$/ Larry Golden

Larry Golden

Plaintiff, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net