IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| LARRY GOLDEN,<br><br>    Plaintiff, *pro se*,<br><br>v.<br><br>THE UNITED STATES,<br><br>    Defendant. | No. 19-104C<br><br>Senior Judge Eric G. Bruggink |

**DEFENDANT UNITED STATES' MOTION TO DISMISS**
<u>**PLAINTIFF'S COMPLAINT**</u>

 

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

NICHOLAS J. KIM
Trial Attorney

March 18, 2019      *Attorneys for the United States*

Received - USCFC

MAR 18 2019

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT PROCEDURAL BACKGROUND........................................................ 2

    A. Alleged Stays in the Lead Case ....................................................................... 2

    B. The IPR Proceeding ......................................................................................... 3

    C. Partial Dismissal & Plaintiff's Attempts To Appeal......................................... 5

III. PLAINTIFF'S NEW COMPLAINT ........................................................................... 6

    A. Paragraphs 42–45: General Allegation of Takings Based On Government Infringement...................................................................................................... 6

    B. Paragraphs 46–48 and 59–79: Alleged Taking Of Sixty-One (61) Claims Based On Cancellation of Three (3) Claims During *Inter Partes* Review. ................. 7

    C. Paragraphs 49–58: Arguments Recycled From Non-Appealed IPR Proceeding.... 8

    D. Paragraphs 80-91: Arguments Recycled From The Lead Case & Premature Appeal............................................................................................................... 8

IV. LEGAL STANDARD ................................................................................................. 9

    A. RCFC 12(b)(1).................................................................................................. 9

    B. RCFC 12(b)(6).................................................................................................. 9

    C. *Pro Se* Plaintiffs Are Not Excused From Failures In Pleading........................ 10

    D. Elements of a Taking Under the Tucker Act. ................................................. 10

V. ARGUMENT............................................................................................................. 10

    A. The New Complaint's Sole Count Alleges Patent Infringement Under Section 1498(a), Which Cannot Be Brought Under This Court's Tucker Act Jurisdiction....................................................................................................... 10

    B. Plaintiff's Cancellation Of His Own Patent Claims In An IPR Does Not Plausibly Allege a Taking By the Government. ............................................................. 12

    C. Plaintiff's Disagreement With This Court or The Federal Circuit Fail To Constitute a Plausible Taking. ........................................................................ 13

VI. CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 9

*AstraZeneca Pharm. PL v. Apotex Corp.*,
    669 F.3d 1376 (Fed. Cir. 2012) .................................................................................. 9

*Bell v. Hood*,
    327 U.S. 678 (1946) ................................................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 9

*Cane Tenn., Inc. v. United States*,
    57 Fed. Cl. 115 (2003) ............................................................................................. 14

*Christy v. United States*,
    141 Fed. Cl. 641 (2019) ........................................................................................... 12

*Collins v. United States*,
    67 F.3d 284 (Fed. Cir. 1995) .................................................................................... 13

*Crozier v. Fried. Krupp Aktiengesellschaft*,
    224 U.S. 290 (1912) ................................................................................................. 11

*Forest Glen Props., LLC v. United States*,
    79 Fed. Cl. 669 (2007) ............................................................................................... 9

*Golden v. United States*,
    CFC Case No. 13-307 ................................................................................................ 1

*Golden v. United States*,
    Appeal No. 19-100 ..................................................................................................... 6

*Haines v. Kerner*,
    404 U.S. 519 (1972) ................................................................................................. 10

*Hardie v. United States*,
    367 F.3d 1228 (Fed. Cir. 2004) .................................................................................. 9

*Hardy v. United States*,
    138 Fed. Cl. 344 (2018) ........................................................................................... 13

                                                                       **Page**

*Henke v. United States*,
   60 F.3d 795 (Fed. Cir. 1995) ............................................................................................. 10

*Illinois v. United States*,
   15 Cl. Ct. 399 (1988) ......................................................................................................... 1

*Keehn v. United States*,
   110 Fed. Cl. 306 (2013) ................................................................................................... 11

*Lamson v. United States*,
   101 Fed. Cl. 280 (2011) ................................................................................................... 11

*McNutt v. Gen. Motors Acceptance Corp.*,
   298 U.S. 178 (1936) ........................................................................................................ 10

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
   138 S. Ct. 1365 (2018) ..................................................................................................... 12

*Peck v. Merletti*,
   64 F. Supp. 2d 599 (E.D. Va. 1999) .................................................................................. 1

*Reynolds v. Army & Air Force Exch. Serv.*,
   846 F.2d 746 (Fed. Cir. 1988) ......................................................................................... 10

*Schillinger v. United States*,
   153 U.S. 163 (1894) ........................................................................................................ 11

*Sheridan v. United States*,
   120 Fed. Cl. 127 (Fed. Cl. 2015) ...................................................................................... 9

*Skip Kirchdorfer, Inc. v. United States*,
   6 F.3d 1573 (Fed. Cir. 1993) ........................................................................................... 10

*Suttles v. Office of Pers. Mgmt.*,
   No. 98-3183, 1998 WL 537763 (Fed. Cir. Aug. 10, 1998) ............................................... 9

*Williamson Cty. Re'l Planning Comm'n v. Hamilton Bank*,
   473 U.S. 172 (1985) ........................................................................................................ 13

*Zoltek v. United States*,
   442 F.3d 1345 (Fed. Cir. 2006) ....................................................................................... 11

*Zoltek v. United States*,
   672 F.3d 1309 (Fed. Cir. 2012) (en banc) ....................................................................... 11

|  | Page |
|---|---|
| **Statutes** | |
| 28 U.S.C. § 1491(a) | *passim* |
| 28 U.S.C. § 1498(a) | 2, 8, 11 |
| 35 U.S.C. § 316 | 3 |
| 35 U.S.C. §§ 311–319 | 3 |
| **Rules** | |
| RCFC 8(a) | 1 |
| RCFC 12(a)(4) | 1 |
| RCFC 12(b)(1) | 1, 9, 12, 14 |
| RCFC 12(b)(6) | 9, 12, 14 |

Defendant The United States ("the Government") hereby moves to dismiss Plaintiff's Complaint (Dkt. 1) in Case No. 19-104 (the "New Complaint") under RCFC 12(b)(6) for failure to state a claim for which relief can be granted and/or RCFC 12(b)(1) for lack of jurisdiction. In accordance with RCFC 12(a)(4), this motion is being filed in lieu of answering Plaintiff's New Complaint. *See Illinois v. United States*, 15 Cl. Ct. 399, 413 (1988).

## I.   INTRODUCTION

Plaintiff's New Complaint was filed on January 17, 2019, after this Court lifted the stay on Plaintiff's takings claims in Plaintiff's lead case and set a briefing schedule for a motion to dismiss Plaintiff's takings claims from that case. *See Golden v. United States*, CFC Case No. 13-307 ("Lead Case") at Dkt. 149. This Court consolidated the two actions after finding that the "cause of action stated in [the New Complaint] is duplicative of plaintiff's takings claim in [the Lead Case]." Dkt. 4. Spanning over fifty pages for what is allegedly a single count, the New Complaint is unnecessarily prolix,[1] making it difficult to discern the precise contours of Plaintiff's actual takings theory. As a result, this motion is based on the Government's present understanding of Plaintiff's various allegations.

Through the New Complaint, Plaintiff invokes this Court's Tucker Act jurisdiction, alleging as his single count ("Count I") a Constitutional taking based on the actions of various agencies and entities within the United States government. The Complaint addresses alleged activities purportedly conducted by numerous departments and agencies including the Department of Homeland Security ("DHS"), the Department of Justice ("DOJ"), the U.S. Patent & Trademark Office's ("PTO's") Patent Trial & Appeal Board ("PTAB"), this Court (in

---

[1]   *See* RCFC 8(a) (requiring "short and plain" statements); *Peck v. Merletti*, 64 F. Supp. 2d 599, 602 (E.D. Va. 1999) ("Even *pro se* litigants must state their claims in an understandable and efficient manner."). For example, the New Complaint contains redundant allegations. *See, e.g.*, New Compl. ¶¶60, 67, 74.

particular, former Senior Judge Susan Braden and the judge currently assigned to the case), and even the Court of Appeals for the Federal Circuit. *See* New Compl. at 2 (listing governmental entities) and 3 (attempting to invoke jurisdiction under 28 U.S.C. § 1491(a), but not 28 U.S.C. § 1498(a)). However, as this Court recognized in its consolidation Order (Dkt. 4), the takings claim of New Complaint is essentially the same as Plaintiff's takings claim in the Lead Case, which the Government also seeks to dismiss. And even considering Plaintiff's myriad allegations, the New Complaint still fails to state a plausible taking claim under the Tucker Act and/or fails to allege a claim coming under this Court's Tucker Act jurisdiction.

## II.   RELEVANT PROCEDURAL BACKGROUND

To facilitate understanding of Plaintiff's wide-ranging allegations, the Government briefly summarizes several relevant parts of the procedural history of the Lead Case before this Court and the parallel *inter partes* review ("IPR") proceedings before the PTAB.

### A.   Alleged Stays in the Lead Case

Plaintiff alleges that this Court improperly stayed his takings claims and his patent infringement claims. This Court originally stayed Plaintiff's takings claims in 2014, finding them to be "duplicative" of his patent infringement claims. Dkt. 38. This partial stay was lifted in November 2018. Dkt. 149.

Without specifics, Plaintiff also alleges that the Court stayed his patent infringement claims. However, the docket reflects that the Court never entered a stay of the infringement claims. On the contrary, the Court clarified that its stay applied only to the takings claims. *See* Dkt. 51 (clarifying that its prior "Order granting Plaintiff's Motion to Stay applies only to the Fifth Amendment takings claims . . . The stay is continued as to these claims"). And throughout the Lead Case, the Court repeatedly entertained and permitted Plaintiff to add additional patent infringement allegations to his complaint, culminating in Plaintiff's Final Amended Complaint,

filed August 10, 2017, which included dozens of disparate patent infringement allegations. *See* Dkts. 68, 120.

### B. The IPR Proceeding

Contrary to Plaintiff's assertions, DHS (and not DOJ or PTAB[2]) petitioned for *inter partes* review of the '990 patent. DHS filed its petition on April 30, 2014, seeking review of only three independent claims (11, 74, 81). *See* IPR2014-00714 at Paper 1.[3] On October 8, 2014, the proceeding was instituted as IPR2014-00714. *See* IPR2014-00714 at Paper 16. In these proceedings, Plaintiff was represented by counsel until January 6, 2015. *See* IPR2014-00714 at Paper 20 (granting counsel's motion to withdraw). In addition to repeatedly recommending that Plaintiff retain counsel for the IPR, the record reflects that PTAB went to great lengths to accommodate Mr. Golden's status as a *pro se*.

For example, after IPR proceedings have been instituted, the Patent Owner (here, Mr. Golden) is provided with an opportunity to file a Patent Owner's Response and, if desired, to file a motion to amend the claims being challenged in the IPR. *See* 35 U.S.C. § 316(d)(1) ("Amendment of the Patent"). On January 7, 2015, Mr. Golden (by this point, proceeding *pro se*) attempted to file a Patent Owner Response and Motion to Amend. *See* IPR2014-00714 at Paper 23. Soon thereafter, on January 9, PTAB initiated a conference call to provide Mr. Golden with guidance on how to file such papers in a compliant manner. *Id.* On this call, PTAB notified Mr. Golden that it was "unclear whether [his] Motion to Amend was contingent on [PTAB] finding the claims at issue unpatentable over the challenges brought by Petitioner." *Id.* PTAB

---

[2] The *inter partes review* petition was directed to the PTAB, which has cognizance over such petitions by law, 35 U.S.C. §§ 311–319.
[3] The dockets for IPR proceedings before the PTAB are publicly available online at *https://ptab.uspto.gov*.

further carefully explained to Mr. Golden the significant difference in IPR proceedings between contingent and non-contingent motions to amend, explaining that:

> "[F]or a contingent motion to amend, we would look at the motion only if the claims at issue are found to be unpatentable over the challenges brought by a petitioner. We explained further that a non-contingent motion to amend would be addressed regardless of whether the claims at issue were found to be unpatentable. In that regard, we note that Petitioner has the burden of demonstrating that the claims at issue are unpatentable by a preponderance of the evidence. <u>If the Motion to Amend is non-contingent, Mr. Golden is, in essence, abandoning the claims at issue</u>, and saying that we should only look at the claims as amended in the Motion to Amend. <u>Mr. Golden, however, has the burden of demonstrating that the amended claims are patentable by a preponderance of the evidence</u>."

*Id.* at 2–3 (emphasis added). To further assist Mr. Golden in making proper filings, PTAB directed Mr. Golden to cases discussing the requirements for a motion to amend. *Id.* at 3. Mr. Golden subsequently filed his Patent Owner's Response and two Motions to Amend on January 23, 2015. *See* IPR2014-00714 at Papers 24–26. One of the Motions to Amend, entitled "Patent Owner's Non-Contingent Motion to Amend Claims," stated unambiguously:

> The Patent Owner understands that by <u>abandoning the claims at issue</u>, and saying that the PTAB should only look at the claims as amended in the "Motion to Amend". The Patent Owner also understands the burden of demonstrating the amended claims are patentable by a preponderance of the evidence.

*See* IPR2014-00714 at Paper 25 at 1. This Motion proposed new claims 154–156 as substitutes for the originally challenged claims 11, 74 and 81. *Id.*

PTAB convened another teleconference on February 3, 2015, to discuss the Motions to Amend with Mr. Golden. PTAB again stressed the difference between the types of motions to amend, and <u>twice</u> sought Mr. Golden's confirmation:

> "<u>Upon inquiry</u>, Mr. Golden stated that the Motion to Amend was non-contingent. We reminded Mr. Golden that, as set forth in our order of January 13, 2015 (Paper 23), with a non-contingent motion to amend, he bears the burden of demonstrating that the claims are patentable, and that he is abandoning the claims on which trial was instituted. <u>Mr. Golden confirmed again that the motion to amend was a non-contingent motion to amend</u>."

– 4 –

IPR2014-00714 at Paper 29 (emphasis added). Having yet again clarified Mr. Golden's intentions with his amendments, PTAB accepted Mr. Golden's two Motions to Amend as a single, non-contingent motion to amend. *Id.* at 2.

On October 1, 2015, the PTAB issued its Final Written Decision, which granted Plaintiff's non-contingent Motion to Amend. *See* IPR2014-00714 at Paper 35. In the Final Written Decision, PTAB <u>granted Mr. Golden's non-contingent motion to amend</u>, which resulted in cancellation of the challenged independent claims (11, 74, 81) of the '990 patent. *Id.*

In other words, rather than argue for the patentability of the challenged claims, Plaintiff "request[ed] cancellation" of the claims issued to him in the '990 Patent in favor assuming the burden to prove that his new substitute claims were patentable. *Id.* at 3. Having abandoned his original claims, Plaintiff had the burden to show that new substitute claims 154–156 were patentable. As to those claims, the PTAB found the substitute claims were not patentable over the prior art. *Id.* at 3, 12–32 (denying entry of substitute claims 154–156). Accordingly, Plaintiff's substitute claims were denied entry.

Mr. Golden sought rehearing of PTAB's decision to deny his motion to amend the '990 Patent to add substitute claims 154–156. Paper 36. After PTAB denied his request for rehearing on November 17, 2015 (Paper 37), Mr. Golden <u>did not appeal</u> to the Federal Circuit. As such, claims 11, 74, and 81 remained cancelled.

### C.    Partial Dismissal & Plaintiff's Attempts To Appeal

After Plaintiff filed his "Final Amended Complaint" (Dkt. 120), the Government moved for partial dismissal. Dkt. 123. The Court granted the Government's motion. Dkt. 130 ("Partial Dismissal Order"). Mr. Golden attempted to appeal the Partial Dismissal Order to the Federal Circuit. Dkt. 131. The Federal Circuit dismissed the appeal. Dkt. 132 (CAFC Order dismissing

Appeal No. 2018-1942). Unsatisfied, Mr. Golden petitioned the Federal Circuit for a writ of mandamus. *Golden v. United States*, Appeal No. 19-100 at Dkt. 2-1. The Federal Circuit denied Plaintiff's petition and Plaintiff's subsequent motion for reconsideration. *Id.* at Dkt. 4, 6.

## III. PLAINTIFF'S NEW COMPLAINT

Plaintiff alleges numerous takings of the subject matter of his patents based on a diverse set of actions by several governmental entities in different branches of the United States' government. The Government's understanding of Plaintiff's myriad allegations is outlined below.

### A. Paragraphs 42–45: General Allegation of Takings Based On Government Infringement.

In Paragraphs 42–45, Plaintiff alleges that the property taken to be the property right in his patents: the "subject matter as outlined in the Plaintiff's patent(s) specifications and patent claims that are significantly the same or equivalent to the claimed inventions of the Plaintiff." *See* New Compl. ¶43 (emphasis added); *see also id.* ¶42 (listing Plaintiff's ten (10) asserted patents). Plaintiff further alleges the Government's use "result[ed] in the Government's manufacture and development of products, devices, methods, and systems that are significantly the same or equivalent to the claimed inventions of the Plaintiff." *Id.* ¶43. Plaintiff further alleges that, "by virtue of the access, disclosure, manufacture, development or use, by or for the Government and its third party awardees," Plaintiff's competitive edge has been "destroyed." *Id.* ¶44.

These allegations, which are central to the New Complaint, are indistinguishable from the takings allegations of the Final Complaint in the Lead Case. *See* Lead Case, Dkt. 120 at ¶¶87–88.

### B. Paragraphs 46–48 and 59–79: Alleged Taking Of Sixty-One (61) Claims Based On Cancellation of Three (3) Claims During *Inter Partes* Review.

In Paragraphs 46–48, the New Complaint alleges that this Court's partial stay (*i.e.*, of his takings claims) "allowed" the Government to take sixty-one (61) of Plaintiff's claims across multiple patents.[4] *See* Lead Case, Dkt. 38. In particular, Plaintiff alleges that the DOJ, DHS and PTAB took three independent claims (claims 11, 74 and 81) of Plaintiff's '990 Patent. *See* New Compl. ¶47. These correspond to the three claims Plaintiff abandoned during the IPR. *See supra*, Section II.B. Plaintiff also alleges that the three substitute claims unsuccessfully introduced during the IPR of the '990 Patent (claims 154–156) were also taken. New Compl. ¶58.

In turn, Plaintiff appears to allege that the cancellation of these three patents resulted in a taking of fifty-eight (58) other claims, including thirty-eight (38) dependent claims of the '990 Patent that were not subject to *inter partes* review, nine independent claims of Plaintiff's U.S. Patent No. 9,096,189 ("the '189 Patent") and eleven independent claims of Plaintiff's U.S. Patent No. 9,589,439 ("the '439 Patent"). *Id.* ¶48. Both the '189 and '439 Patents were being prosecuted by Mr. Golden in parallel with the IPR of the '990 Patent, and Mr. Golden alleges that he pursued claims in these later patents intended to be "significantly the same" as the claims cancelled during the IPR of the '990 Patent. *See* New Compl. ¶¶59–79 (referring variously to "substitute claims"). Apparently based on the same logic, Plaintiff alleges that dozens of dependent claims of the '990 patent, despite not having been challenged during the IPR proceeding, have also been taken based on their dependency from cancelled claims of the '990

---

[4] However, in alleging a taking based on "permanent invasion of the Plaintiff's property [that eliminated] all economically beneficial uses of such property" (New Compl. ¶¶45, 47), the New Complaint does not reconcile these allegations with the fact that this partial stay was lifted on November 9, 2018. *See* Lead Case at Dkt. 149.

patent (*see* New Compl. ¶¶63, 70, 77), or because they allegedly have "significantly the same" scope as claims in the '189 and '439 Patents (*see* New Compl. ¶¶64, 71, 78).

Although Plaintiff's logic is disjointed, legally incorrect, and far from clear, Plaintiff's purposeful pursuit of redundant claim scope has apparently resulted in a "cascade" of potential invalidity, where the cancellation of only three claims of one patent has jeopardized the validity of almost sixty other asserted claims across multiple patents.

### C. Paragraphs 49–58: Arguments Recycled From Non-Appealed IPR Proceeding.

At Paragraphs 49–58, Plaintiff alleges takings based on purported errors that occurred during the IPR, which were allegedly "allowed" by an unspecified stay of his Section 1498(a) patent infringement allegations. Plaintiff raised each of these arguments before PTAB. However, as discussed above, the PTAB ruled adverse to Plaintiff's positions and Plaintiff failed to appeal any of these issues to the Federal Circuit.

### D. Paragraphs 80-91: Arguments Recycled From The Lead Case & Premature Appeal.

At Paragraphs 80–91, Plaintiff recycles his prior arguments regarding a myriad of purported slights in the Lead Case. For example, Plaintiff again alleges that the Court "abused its discretion" regarding procedural decisions in the Lead Case. New Compl. ¶¶80–81, 85–86. Plaintiff also repeats his dissatisfaction with the Court's Partial Dismissal Order and subsequent proceedings in this Court, including allegations that judges of this Court are participating in taking Plaintiff's property. New Compl. ¶¶82–90. Finally, Plaintiff's final allegation targets the Federal Circuit's denial of Plaintiff's Petition for Writ of Mandamus. New Compl. ¶91.

IV.  **LEGAL STANDARD**

A.  **RCFC 12(b)(1)**

Under RCFC 12(b)(1), subject-matter jurisdiction must be established by the plaintiff before a court proceeds to the merits of the action. *Sheridan v. United States*, 120 Fed. Cl. 127, 129 (Fed. Cl. 2015) (citing *Hardie v. United States*, 367 F.3d 1228, 1290 (Fed. Cir. 2004)). When ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court ordinarily accepts as true all of the non-movant's factual allegations. *Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669, 676 (2007). But jurisdiction is not support by allegations that are frivolous or merely conclusory. *Id.* at 676 n.17; *AstraZeneca Pharm. PL v. Apotex Corp.*, 669 F.3d 1370, 1376 (Fed. Cir. 2012) ("accepting as true" only "non-conclusory allegations of fact"); *Suttles v. Office of Pers. Mgmt.*, No. 98-3183, 1998 WL 537763, at *1 (Fed. Cir. Aug. 10, 1998) (requiring non-frivolous, non-conclusory allegations of specified fact); *see also Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (directing courts to exercise their jurisdiction to adjudicate cases except 1) where the alleged claim under the Constitution or federal statute clearly appears immaterial and made solely for the purpose of obtaining jurisdiction; or 2) where such a claim is wholly insubstantial and frivolous).

B.  **RCFC 12(b)(6)**

Under RCFC 12(b)(6), the Court may dismiss a cause of action if it fails to state a claim for which relief may be granted. Although well-pled factual allegations are accepted as true, the factual allegations in the Complaint must be enough to raise a right to relief above the speculative level, and they need to state a claim of relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This "requires more than labels and conclusions." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the assumption of truth does not apply to legal conclusions).

C.      *Pro Se* **Plaintiffs Are Not Excused From Failures In Pleading.**

*Pro se* plaintiffs' pleadings are held to a less stringent standard than pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). On the other hand, while the Court may excuse ambiguities in a *pro se* plaintiff's complaint, the Court "does not excuse [its] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). Additionally, a *pro se* plaintiff must still allege facts essential to show jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

D.      **Elements of a Taking Under the Tucker Act.**

As part of a takings case, the plaintiff must show a legally-cognizable property interest. *Skip Kirchdorfer, Inc. v. United States*, 6 F.3d 1573, 1580 (Fed. Cir. 1993). Not all losses generate a Fifth Amendment taking. *Id.*

V.      **ARGUMENT**

Each of Plaintiff's various takings theories should be dismissed for the reasons below.

A.      **The New Complaint's Sole Count Alleges Patent Infringement Under Section 1498(a), Which Cannot Be Brought Under This Court's Tucker Act Jurisdiction.**

While labelled as a "taking," Plaintiff's sole count actually alleges patent infringement under Section 1498(a), <u>exactly</u> as Plaintiff pled in the Lead Case, No. 13-307. *Compare* New Compl. ¶43 ("[T]he 'Government' has taken and used for the benefit of the public, the private and personal property <u>subject matter as outlined in the Plaintiff's patent(s) specifications and patent claims</u> that are significantly the same or equivalent to the <u>claimed inventions of the Plaintiff</u>; resulting in <u>the Government's manufacture and development</u> of products, devices, methods, and systems that are significantly the same or equivalent to the <u>claimed inventions of the Plaintiff</u>.") (emphasis added), ¶42 (listing Plaintiff's ten (10) asserted patents), and ¶44

– 10 –

(alleging economic impact "by virtue of the <u>access, disclosure, manufacture, development or use,</u> by or for the Government and its third party awardees") *with* 28 U.S.C. § 1498(a) ("used or manufactured by or for the United States without license").

Of course, claims against the Government for patent infringement cannot be brought under the Tucker Act. *Schillinger v. United States*, 153 U.S. 163, 169 (1894) (affirming dismissal of a claim "plainly and solely an action for an infringement"); *see also Crozier v. Fried. Krupp Aktiengesellschaft*, 224 U.S. 290, 304 (1912) (finding that the predecessor of § 1498 "add[ed] to the right to sue the United States in the Court of Claims"); *Zoltek v. United States*, 442 F.3d 1345, 1350–53 (Fed. Cir. 2006), *vacated on other grounds*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc) (finding that the Supreme Court "acknowledged Congressional recognition that the Court of Claims lacked Tucker Act jurisdiction over infringement under a takings theory"); *Keehn v. United States*, 110 Fed. Cl. 306, 335 (2013) ("It is 28 U.S.C. § 1498(a), not the Fifth Amendment to the United States Constitution, that provides the waiver of sovereign immunity that enables a plaintiff to file suit against the government for patent infringement.") (citing *Lamson v. United States*, 101 Fed. Cl. 280, 284–85 (2011) (discussing *Schillinger* and *Zoltek* in dismissing for lack of jurisdiction a Fifth Amendment takings claim in connection with the alleged use of the plaintiff's patent by federal "grantees")).

Attempting to circumvent this Court's dismissals of most of Plaintiff's patent infringement claims in the Lead Case (*see* Dkts. 130, 151), Plaintiff's New Complaint purposefully attempts to invoke this Court's jurisdiction only under the Tucker Act for claims that can only be brought under Section 1498. Therefore, for at least the same reasons set forth in the Government's "Motion to Dismiss Plaintiff's Final Complaint (Dkt. 120)" filed concurrently

herewith, Plaintiff's New Complaint should be dismissed under RCFC 12(b)(6) for failure to state a claim, or under RCFC 12(b)(1) for lack of jurisdiction.

### B. Plaintiff's Cancellation Of His Own Patent Claims In An IPR Does Not Plausibly Allege a Taking By the Government.

Simply put, Plaintiff's affirmative decision to abandon three claims challenged in the IPR proceeding (*i.e.*, claims 11, 74 and 81 of the '990 Patent), instead of arguing for their patentability, cannot plausibly constitute a taking <u>by the Government</u>. Mr. Golden had a full and fair opportunity in the IPR proceeding to argue that the challenged claims were patentable without amendment. He declined to do so. Instead, he immediately sought to introduce new claims, and in response to PTAB's multiple inquiries, reiterated his informed decision to <u>abandon</u> the challenged claims. Accordingly, because the cancellation of claims 11, 74 and 81 of the '990 Patent were the result of Plaintiff's own action, the cancelled claims of the '990 Patent do not give rise to a compensable taking.[5]

Plaintiff's allegations of the taking of <u>un</u>challenged claims are even more fanciful. Starting with the dependent claims of the '990 Patent, these were not even the subject of the IPR proceedings. As such, they were not cancelled during the IPR and cannot have been taken. Turning to the '439 Patent and the '189 Patents, neither patents were involved in the IPR of the '990 Patent, let alone any claim therein cancelled by that IPR proceeding. Finally, Plaintiff has no more of a property right to substitute claims introduced and rejected in an IPR than to claims rejected in the original *ex parte* examination process. In either case, Plaintiff must demonstrate

---

[5]  On even more general terms, this Court recently rejected an IPR-based takings theory as being not plausible. *See Christy v. United States*, 141 Fed. Cl. 641, 657–61 (2019) (finding that PTAB's invalidation of plaintiff's patent claims in IPR proceedings did not allege a plausible takings claim); *see also Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1374–75 (2018) (noting that "[p]atents convey only a specific form of property right—a public franchise" and "[a]s a public franchise, a patent can confer only the rights that the statute prescribes").

that the claims are patentable before the PTO will allow such claims to issue in a patent. Moreover, because Plaintiff declined to appeal PTAB's finding of unpatentability of substitute claims, or any other matter that occurred during the IPR, the events and results of the IPR of the '990 Patent cannot give rise to a compensable taking.

### C. Plaintiff's Disagreement With This Court or The Federal Circuit Fail To Constitute a Plausible Taking.

Finally, Plaintiff's various takings allegations that amount to disagreement over procedural and substantive rulings of this Court and the Federal Circuit are not actionable takings under the Tucker Act. As a preliminary matter, many of Plaintiff's allegations in this vein appear to allege a violation of the due process clause of the Fifth Amendment, over which this Court lack jurisdiction. *See Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (holding that the Fifth Amendment's "due process clause does not obligate the government to pay money damages"). Additionally, this Court and the Federal Circuit adjudicate Plaintiff's takings allegations based on actions taken by other Governmental entities (such as executive agencies); they do not themselves impair Plaintiff's property rights.

Furthermore, the Lead Case is far from a final decision, so Plaintiff's takings allegations on the basis of that case are premature. *See Williamson Cty. Re'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 n.13 (1985) ("As we have explained, however, because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied."). Also relating to timing, Plaintiff's taking allegations relating to any stay in the Lead Case fail to state a claim because delay damages would compensate for lost use of any takings award between the date of the taking and the date of the payment. *See Hardy v. United States*, 138 Fed. Cl. 344, 349 (2018). Additionally, Plaintiff has

not shown that the stays constituted the "extraordinary delay" required to prevail on a temporary takings claim. *Cane Tenn., Inc. v. United States*, 57 Fed. Cl. 115, 131–32 (2003).

Moreover, in this case, the Court has found that Plaintiff's takings allegations are adequately covered (indeed, duplicated) by Plaintiff's Section 1498(a) allegations of patent infringement, undermining the potential that any property right has actually been impaired. Therefore, Plaintiff's takings allegations involving the decisions of this Court and its reviewing tribunal are entirely without merit.

## VI.  CONCLUSION

For the above reasons, the Government respectfully requests that Plaintiff's Complaint be dismissed under RCFC 12(b)(1) for lack of jurisdiction and/or RCFC 12(b)(6) for failing to state a claim for which relief can be granted.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

March 18, 2019

NICHOLAS J. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC  20530
*Nicholas.J.Kim@usdoj.gov*
T: (202) 616-8116
F: (202) 307-0345

*Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "DEFENDANT UNITED STATES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT" was deposited with Federal Express on March 18, 2019, postage pre-paid, to:

> Larry Golden
> 740 Woodruff Road
> #1102
> Greenville, SC 29607

Plaintiff, *pro se*

_____
Nicholas J. Kim
Department of Justice