# United States Court of Appeals
# for the Federal Circuit

———————————————

**LARRY GOLDEN,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————————

2019-2134

———————————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00104-EGB, Senior Judge Eric G. Bruggink.

———————————————

Decided:  April 10, 2020

———————————————

LARRY GOLDEN, Greenville, SC, pro se.

DAVID ALLEN FOLEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by JOSEPH H. HUNT, GARY LEE HAUSKEN.

———————————————

Before O'MALLEY, MAYER, and WALLACH, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Larry Golden ("Golden") appeals an order of the United States Court of Federal Claims ("Claims Court")

dismissing his claims against the United States ("government") pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Claims Court ("RCFC"). The Claims Court held that Golden's complaint alleges a duplicative claim over which the court lacked jurisdiction, and his complaint fails to state a claim upon which relief can be granted. *Golden v. United States*, No. 19-cv-00104 (Fed. Cl. May 14, 2019), ECF No. 12 ("*Claims Court Op.*"). For the reasons explained below, we affirm.

## BACKGROUND

Golden, proceeding pro se, filed this suit pursuant to 28 U.S.C. § 1491(a) on January 17, 2019, seeking "reasonable and entire compensation for the unlicensed use and manufacture" of his "inventions described in and covered by" various patents. *Golden v. United States*, No. 19-104C (Fed. Cl. May 14, 2019), ECF No. 1; SAppx1012.[1] Relevant to this appeal are certain other proceedings involving some or all of the patents that were the subject of Golden's complaint in this case: *Golden v. United States*, No. 13-307C (Fed. Cl. May 1, 2013) ("Lead Case") and *U.S. Dep't of Homeland Security v. Golden*, No. IPR 2014-00714 ("the IPR"). Resolution of this appeal does not require a detailed recitation of the factual background of the Lead Case or the

---

[1]     Golden filed an "Informal Brief Appendix" on September 3, 2019, using the prefix "Appx." Golden also filed an additional appendix with his reply brief on November 7, 2019. This Reply Appendix also uses the prefix "Appx," and restarts the numbering at Appx1. The government, for its part, filed a Supplemental Appendix, using the same "Appx" prefix as Golden's two appendices, but beginning the numbering at Appx1000. We cite to the government's Supplemental Appendix as "SAppx," Golden's "Informal Brief Appendix" as "Appx," and Golden's Reply Appendix as "RAppx."

IPR. Accordingly, only the facts relevant to this appeal are discussed below.

## A. Lead Case

On May 1, 2013, Golden filed the complaint in the Lead Case, alleging patent infringement by the government pursuant to 28 U.S.C. § 1498(a). The trial court allowed Golden to amend his complaint five times, and, with each amendment, Golden added claims of infringement of additional patents. Starting with the second amended complaint, Golden also included allegations of "Government Taking," alleging that the government had "taken the subject matter, scope, technology rationale, devices schematics, processes, methods, procedures and systems of what is now Golden's patents . . . for public use without just compensation." SAppx1791–93. Golden alleged that the Claims Court had jurisdiction over his takings claims under 28 U.S.C. § 1491. SAppx1791. Noting that the takings claims appeared to be duplicative of the patent infringement claims, the trial court initially stayed Golden's takings claims, "pending determination of liability for the Government's alleged patent infringement." SAppx1794 (citing *Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (*en banc*)).

On August 10, 2017, Golden filed his fifth and final amended complaint in the Lead Case. SAppx2040. This voluminous filing included a general "Count I," alleging "Fifth Amendment Takings" of nine of Golden's patents. SAppx2065–67.[2] It also included additional specific "Count Is," which recite takings allegations tailored to the use of specific electronic devices. *See, e.g.*, SAppx2069–70 (LG

---

[2]    Specifically, Golden alleged taking of the "subject matter as outlined in" his U.S. Patent Nos. 7,385,497; 7,636,033; 8,106,752; 8,334,761; 8,531,280; RE43,891; RE43,990; 9,096,189; and 9,589,439. SAppx2065.

Electronics G5 Smartphone), SAppx2071–73 (LG Electronics V10 Smartphone), SAppx2074–75 (Apple's iPhone/iPad Camera Biosensor for Facial Heart Rate Monitor). The complaint similarly included corresponding "Count IIs"—patent infringement claims under 28 U.S.C. § 1498 referencing the same electronic devices. *See, e.g.*, SAppx2067–69; SAppx2070–71; SAppx2073–74; SAppx2075–76.[3]

On March 29, 2018, the Claims Court issued a memorandum opinion and order, granting-in-part the government's motion for partial dismissal of the Lead Case and denying Golden's motion for leave to file a motion for summary judgment. *Golden v. United States*, 137 Fed. Cl. 155, 159 (2018) (dismissing certain patent infringement claims). Golden appealed the partial dismissal opinion to this court. SAppx2301. We dismissed the appeal as premature because the Claims Court had not yet issued a final decision or judgment in the Lead Case. Order, *Golden v. United States*, No. 2018-1942 (Fed. Cir. Aug. 1, 2018); Order, *Golden v. United States*, No. 2018-1942 (Fed. Cir. May 31, 2018).

In November 2018, the Claims Court lifted the stay on Golden's takings claims in the Lead Case, "[t]o pursue efficient resolution of all claims in th[e] case[.]" SAppx2303–4. The court permitted the government to file a motion to dismiss those claims. SAppx2304. On May 8, 2019, the trial court granted the government's motion and dismissed Golden's takings claims. *Golden v. United States*, No. 13-307C, 2019 WL 2056662, at *3 (Fed. Cl. May 8, 2019).

---

[3]    Golden's generic patent infringement "Count II" referenced the same nine patents as his takings claims, as well as his Continuation Patent Application No. 15/530,839, which later issued as U.S. Patent No. 10,163,287. SAppx2067–69.

Certain patent infringement allegations from the Lead Case have not yet been resolved, however. SAppx2303. The case is stayed pending resolution of Golden's petition in an *inter partes* review proceeding affecting one of the patents at issue in the Lead Case. SAppx2339–40. The court's rulings on the takings claims in the Lead Case are, accordingly, not yet ripe for appeal to this court.

### B. *Inter Partes* Review of U.S. Patent No. RE43,990

On April 30, 2014, the Department of Homeland Security ("DHS") petitioned the Patent Trial and Appeal Board ("Board") for *inter partes* review of claims 11, 74, and 81 of Golden's U.S. Patent No. RE43,900. The Board instituted review on October 8, 2014. During this proceeding, Golden filed, pro se, a Patent Owner Response and Motion to Amend. The Board held a conference call with the parties following this filing, and informed Golden that it was unclear whether his Motion to Amend was contingent on the Board finding the challenged claims unpatentable. SAppx2434–36. The Board informed Golden that, if his Motion to Amend was non-contingent, he was "in essence, abandoning the claims at issue, and saying that we should only look at the claims as amended in the Motion to Amend." SAppx2436. The Board also "urge[d]" Golden "to retain new counsel because of the possible consequences of this proceeding, as well as its very technical nature." SAppx2437. In response, Golden again filed his Patent Owner Response, as well as two separate Motions to Amend, which the Board treated "in the collective as a single motion to amend." SAppx2512.

On February 3, 2015, the Board held another teleconference, and confirmed with Golden that his Motion to Amend was, indeed, non-contingent. According to the Board, Golden confirmed "that he is abandoning the claims on which trial was instituted." SAppx2512. The Board issued its final written decision on October 1, 2015. It

granted Golden's non-contingent request to cancel the original claims. It also found that Golden had failed to demonstrate by a preponderance of the evidence that his proposed substitute claims were patentable over the prior art. SAppx2547.

Golden did not appeal the Board's final written decision, but is currently petitioning the Patent and Trademark Office ("PTO") (through counsel) to strike the *Inter Partes* Review Certificate as an *ultra vires* agency action. In that petition, Golden argues that, under the Supreme Court's recent decision in *Return Mail, Inc. v. U.S. Postal Serv.*, 139 S. Ct. 1853 (2019), a government agency may not petition for IPR. SAppx2600–02.

## C.  The Present Case

Golden filed the present case in January 2019, shortly before the Claims Court granted the government's motion to dismiss the takings claims in the Lead Case. In this action, Golden again seeks compensation for the government's Fifth Amendment Taking of his property, i.e., several of his U.S. patents, which were also at issue in the Lead Case. *Golden v. United States*, No. 19-104C (Fed. Cl. May 14, 2019), ECF No. 1; SAppx1012. In this complaint, Golden alleges takings of the subject matter of his patents based on actions by different entities, including the Board, the Department of Justice, DHS, the Claims Court, and our court. SAppx1011–12. The complaint alleges the takings occurred by virtue of: (1) the government's use, manufacture, development, and disclosure of the subject matter "outlined" in the claims and specifications of Golden's patents; (2) the cancellation of certain patent claims during the IPR initiated by the government; and, (3) certain actions by the Claims Court and the Federal Circuit in the Lead Case. On January 29, 2019, the trial court determined that Golden's complaint raises identical questions of law and fact as the Lead Case and consolidated the cases.

On May 14, 2019, upon the government's motion pursuant to RCFC 12(b)(1) and 12(b)(6), the Claims Court dismissed Golden's complaint in the present case as largely duplicative of the takings claims in the Lead Case, which the court had recently dismissed. *Claims Court Op.* at 1. The court held that, even if the complaint was not duplicative of the Lead Case, the Claims Court did not have jurisdiction over the takings claims because Golden cannot label his patent infringement claim as a "taking" in order to proceed under the court's Tucker Act jurisdiction. According to the trial court, patent infringement claims against the government are to be pursued exclusively under § 1498, and "'patent rights are not cognizable property interests for Takings Clause purposes.'" *Id.* at 3–4 (citing *Zoltek v. United States*, 442 F.3d 1345 (Fed. Cir. 2006) ("*Zoltek I*"), *vacated on other grounds on reh'g en banc*, 672 F.3d 1309 (Fed. Cir. 2012) ("*Zoltek II*") and quoting *Christy, Inc. v. United States*, 141 Fed. Cl. 641, 657–60 (2019)).

As to Golden's IPR-based takings claims, the trial court found that patent rights are not private property for purposes of a Fifth Amendment takings claim. The court then concluded, "setting aside whether an action by the Board could ever constitute a government taking," the cancellation of claims in the IPR was the result of Golden's voluntary amendment of his claims. *Id.* at 4. Finally, as to Golden's grievances against the Claims Court and this court, the trial court explained that the courts adjudicate patent rights, and, "in any event, as Mr. Golden himself notes, both courts have allowed his patent claims to continue in the [Lead Case]." *Id.* Golden timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Whether the Claims Court properly granted the government's motion to dismiss is a question of law. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). This

court reviews a question of law *de novo* and reverses the Claims Court's legal conclusion only if it is incorrect as a matter of law. *See Placeway Constr. Corp. v. United States*, 920 F.2d 903, 906 (Fed. Cir. 1990).

On appeal, Golden argues that the trial court improperly dismissed his takings claims based on: (1) the government's infringement of his patents; (2) the institution of the IPR; and (3) the Claims Court's dismissal of his causes of action relating to patent claims that were "unjustly cancelled in the IPR." Appellant's Br. 5, 13. He also argues that there were "several breaches of implied-in-fact contracts" by the government. *Id.* at 5. We address each argument in turn.

## A.

We first consider the dismissal of Golden's patent infringement-based takings claims. The Claims Court held that it did not have jurisdiction over these claims pursuant to 28 U.S.C. § 1491, because patent infringement claims against the government are to be pursued exclusively under 28 U.S.C. § 1498. *Claims Court Op.* at 3–4 (citing *Zoltek I*, 442 F.3d at 1350–53). We agree.

The Claims Court has limited jurisdiction to entertain suits against the United States. The Tucker Act is the principal statute governing the jurisdiction of the Claims Court. It waives sovereign immunity for claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491. Section 1491 carves out an important exception: it does not waive sovereign immunity for claims sounding in tort. *Id.* As relevant to this case, another statute, 28 U.S.C. § 1498(a) permits suits against the United States for its unauthorized use of a patented invention. Under this statute, a patent owner may "recover[] . . . his reasonable and entire

compensation for such use and manufacture." 28 U.S.C.
§ 1498(a).

In support of its conclusion that § 1498 provides the
sole avenue for pursuing a claim of patent infringement
against the United States, the Claims Court relied on our
decision in *Zoltek I.* There, we affirmed the Claims Court's
decision that patent owner Zoltek's § 1498(a) infringement
claims against the government were barred because every
step of the claimed method was not performed in the
United States. And, relying on the Supreme Court's deci-
sion in *Schillinger v. United States*, 155 U.S. 163 (1894), we
held that Zoltek was not permitted to proceed under the
Tucker Act by alleging that the infringement was a taking.
*Zoltek I*, 442 F.3d at 1350. As the subsequent history of the
*Zoltek* case shows, our decision in *Zoltek I* does not control
the jurisdictional analysis here.[4] We agree, however, with
the conclusion in *Zoltek I* that 28 U.S.C. § 1498 provides
the only avenue for a patent owner to bring an action
against the government for patent infringement.

The Takings Clause of the Fifth Amendment states
that private property shall not "be taken for public use,

---

[4] There, on remand, the Claims Court granted the
patent owner's motion to amend its complaint and to trans-
fer the case, and certified that decision to us for an inter-
locutory appeal. We then voted *en banc* to vacate the
*Zoltek I* holding that Zoltek's § 1498(a) infringement claims
were barred. *Zoltek II*, 672 F.3d at 1326–27. And, we held
that, "[s]ince the Government's potential liability under
§ 1498(a) is established, we need not and do not reach the
issue of the Government's possible liability under the Con-
stitution for a taking. The trial court's determinations on
that issue are vacated." *Id.* at 1327. The *Zoltek I* takings
analysis, is therefore, persuasive authority, but not binding
on us.

without just compensation." U.S. Const. amend. V. But a cause of action under the Fifth Amendment is unavailable to patent owners alleging infringement by the government. *Schillinger*, 155 U.S. at 168–69. In *Schillinger*, the Supreme Court held that a patentee could not sue the government for patent infringement as a Fifth Amendment taking. *Id.* The Court explained that, under the Tucker Act, Congress waived its sovereign immunity as to certain types of claims, but that waiver does not extend to "claims founded upon torts." *Id.* at 168. According to the Court, a patent infringement action "is one sounding in tort[,]" and, just as Congress could not have intended every wrongful arrest or seizure of property to expose it to damages in the Court of Claims under the Due Process Clause, the wrongful appropriation of a patent license cannot expose the government to liability under the Fifth Amendment's Takings Clause. *Id.* at 168–169. Thus, under *Schillinger*, prior to the Patent Act of 1910 (later codified as amended at 28 U.S.C. § 1498), the Claims Court lacked jurisdiction over patent infringement actions against the government. As we recognized in *Zoltek I*, *Schillinger* remains the law. 442 F.3d at 1350.

Subsequent legislation confirms that a patent owner may not pursue an infringement action as a taking under the Fifth Amendment. Following *Schillinger*, Congress enacted the Patent Act of 1910, which "augmented the Court of Claims' Tucker Act jurisdiction by providing jurisdiction over the tort of patent infringement." *Id.* at 1351. We explained in *Zoltek I* that 28 U.S.C. § 1498 "'add[ed] the right to sue the United States in the court of claims' for patent infringement." *Id.* (quoting *Crozier v. Fried. Krupp Aktiengesellschaft*, 224 U.S. 290, 304 (1912)) (alterations in original). Before the 1910 Act, no patent infringement action could be brought against the government "unless in the Court of Claims under a contract or implied contract theory." *Id.* The Act "'was intended alone to provide for the discrepancy resulting from the right in one case to sue

on the implied contract and the non-existence of a right to sue' for infringement." *Id.* (quoting *William Cramp & Sons Ship & Engine Bldg. Co. v. Int'l Curtis Marine Turbine Co.*, 246 U.S. 28, 41 (1918)). If the right to challenge the government's infringement already existed under the Fifth Amendment, there would be no need to expressly add to the Claims Court's jurisdiction through the Patent Act. *See id.* Indeed, as we recognized in *Zoltek I*, holding to the contrary would "read an entire statute, § 1498, out of existence." *Id.* at 1352.

*Schillinger* mandates the conclusion reached by the *Zoltek I* court, which we expressly adopt today: the Claims Court does not have jurisdiction to hear takings claims based on alleged patent infringement by the government. Those claims sound in tort and are to be pursued exclusively under 28 U.S.C. § 1498. Thus, the Claims Court was without jurisdiction to hear Golden's patent infringement-based takings claims, and it properly dismissed these claims.[5]

## B.

We next turn to Golden's IPR-based takings claims. We first address whether the Claims Court had jurisdiction to hear these claims.

The government alleges that, "upon further consideration," it has identified a jurisdictional problem that was not recognized below. Appellee's Br. 40. The government argues that the American Invents Act ("AIA")'s creation of

---

[5]    Because we find the Claims Court did not have jurisdiction to hear Golden's patent infringement-based takings claims, we need not address the court's alternative holding that these claims are duplicative of the claims in the Lead Case.

*inter partes* review by the Board, followed by judicial review before this court, creates a "'self-executing remedial scheme' that 'supersedes the gap-filling role of the Tucker Act.'" *Id.* at 41 (quoting *United States v. Bormes*, 568 U.S. 6, 13 (2012)). According to the government, the AIA statutory scheme displaces Tucker Act jurisdiction because there is no procedural impediment to presentation of a takings claim to the agency and because the remedial scheme provides for judicial review of constitutional challenges to the agency's action. *Id.* at 43–49.

The government's argument is without merit. In *Bormes*, the Supreme Court explained that Tucker Act jurisdiction is displaced "when *a law assertedly imposing monetary liability on the United States* contains its own judicial remedies." 568 U.S. at 12 (emphasis added). More recently, the Court explained that, "[t]o determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'" *Horne v. Dep't of Agric.,* 569 U.S. 513, 526–27 (2013) (quoting *United States v. Fausto,* 484 U.S. 439, 444 (1988)). Thus, when there is a precisely defined statutory framework for a claim that could be brought against the United States, the Tucker Act gives way to the more specific statutory scheme.

Regardless of the structure of review it establishes, the AIA is not a statute that provides for claims against the United States. Looking to the purpose and text of the statute, the AIA represents an overhaul of the U.S. patent system from a first-to-invent to a first-to-file regime. 35 U.S.C. § 100. It also establishes post-grant review of patents. 35 U.S.C. § 321. The government is correct that, under the AIA, parties may raise constitutional challenges in our court on appeal from Board decisions. But this remedial scheme does not convert the AIA into a statutory framework for claims against the United States. The AIA

is by no means "a law assertedly imposing monetary liability on the United States." *Borne*, 568 U.S. at 12. Accordingly, we reject the government's argument that the AIA displaced Tucker Act jurisdiction over Golden's IPR-based takings claims.[6]

As to the merits of Golden's IPR-based takings claims, on appeal, Golden argues, *inter alia*, that the government's actions (including in the IPR) resulted in a reduction of value of his property, destroyed his competitive edge, and interfered with his "reasonable investment-backed expectations." Appellant's Br. 7–8. We rejected similar arguments in *Celgene Corp. v. Peter*, 931 F.3d 1342 (Fed. Cir. 2019). There, we explained that *inter partes* review proceedings, like patent validity challenges in the district court, "serve the purpose of correcting prior agency error of issuing patents that should not have issued in the first place[.]" *Id.* at 1361. Additionally, we noted that "[p]atent owners have always had the expectation that the validity of patents could be challenged in district court. For forty years, [they] have also had the expectation that the PTO could reconsider the validity of issued patents on particular grounds, applying a preponderance of the evidence standard." *Id.* at 1362–63. Accordingly, we held that retroactive application of *inter partes* review proceedings to pre-AIA patents is not an unconstitutional taking under the Fifth Amendment. *Id.* at 1362.

Although Golden does not challenge *retroactive* application of *inter partes* review in this case, *Celgene* controls the outcome here. Golden, as a patent owner, has "always had the expectation that the validity of patents could be

---

6   This does not, of course, alter our conclusion that an action for patent *infringement* sounds in tort and the only avenue to sue the United States government for unauthorized licensing of patent rights is a suit pursuant to 28 U.S.C. § 1498. *See supra*, Section A.

challenged in district court" or before the PTO. *Id.* at 1362–63. Under *Celgene*, subjecting patents to *inter partes* review proceedings is not an unconstitutional taking under the Fifth Amendment.[7]  *Id.* at 1362.

We are mindful, of course, of the unique circumstances of the IPR in Golden's case. This IPR was initiated by DHS, a federal agency.  Following the cancellation of certain claims of his RE43,990 patent in the IPR, the Supreme Court made clear in *Return Mail* that "a federal agency is not a 'person' who may petition for post-issuance review under the AIA."  139 S. Ct. at 1867.  Golden may argue that, in view of *Return Mail*, the cancellation of the

---

[7]    Although it does not expressly address the issue here, the government has "not dispute[d] that a valid patent is private property for the purposes of the Takings Clause."  *Celgene*, 931 F.3d at 1358.  And, as we noted in *Celgene*, the Supreme Court's recent decision in *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365 (2018), is not to the contrary.  In *Oil States*, the Court explained that "the decision to *grant* a patent is a matter involving public rights—specifically the grant of a public franchise."  138 S. Ct. at 1373 (emphasis in original). At the same time, it "emphasize[d] the narrowness of [its] holding" explaining that it was addressing "only the precise constitutional challenges" raised in that case.  *Id.* at 1379. The Court admonished that its "decision should not be misconstrued as suggesting that patents are not property for purposes of the Due Process Clause or the Takings Clause." *Id.*  Despite the Claims Court's express finding on the status of patent rights under the Fifth Amendment, we decline to address that question here, however, because, even if Golden's patents are his private property for Takings Clause purposes, under *Celgene*, cancellation of patent claims in *inter partes* review cannot be a taking under the Fifth Amendment.

patent claims in an *inter partes* review initiated by the government could be considered an unconstitutional taking under the Fifth Amendment. We need not decide whether that is the case, however, for two reasons. First, Golden did not appeal the Board's final written decision in the IPR to this court, and the decision became final before the *Return Mail* decision was issued. Second, Golden voluntarily filed a non-contingent motion to amend the claims on which the IPR was instituted. His substitute claims were then found unpatentable. The claims at issue were therefore cancelled as result of Golden's own voluntary actions. In these circumstances, cancellation of the claims in the government-initiated *inter partes* review cannot be chargeable to the government under any legal theory.

## C.

Finally, we address Golden's arguments regarding the alleged takings by the Claims Court and the breach of "implied-in-fact contracts" by the government. Appellant's Br. 5, 13. As the Claims Court explained, the actions of the Federal Circuit and the Claims Court cannot be an unconstitutional taking, as both courts "adjudicate rights in patents." *Claims Court Op.* at 4. As to the breach of "implied-in-fact contracts," it appears these arguments are made either in support of Golden's takings claims, discussed above, or raised for the first time on appeal. Accordingly, these arguments are either unpersuasive or waived.

## CONCLUSION

For the foregoing reasons, we affirm the Claims Court's decision. We have considered the parties' remaining arguments and find them unpersuasive.

## AFFIRMED